UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. CHRISTOPHER T. MALLAVARU | CIVIL ACTION NO. 04-732 |
| VERSUS | JUDGE DOHERTY |
| ACADIANA CARDIOLOGY, LLC, ACADIANA CARDIOVASCULAR CENTER, LLC, MEHMOOD PATEL, M.D., OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC. | MAGISTRATE JUDGE HANNA |

*REPORT AND RECOMMENDATION*
*(Rec. Docs. 101, 102, 103, 104, and 105)*

Before the court are several related motions filed by defendants Acadiana

Cardiology, LLC, Acadiana Cardiovascular Center, LLC, and Mehmood Patel, M.D.

(hereinafter collectively referred to as the Patel defendants).  The motions are related and

will be addressed together.  The court held oral argument on the motions.  At oral

argument, the parties advised that the Motion to Dismiss Complaint Without Prejudice for

Lack of Personal Jurisdiction over Defendants Due to Failure to Serve Defendants with

Process Pursuant to Federal Rule of Civil Procedure 12(b)(5) (Rec. Doc. 105) has been

resolved, and therefore, it is recommended that the motion be denied as moot. The

remaining four motions are: (1) Motion to Dismiss Government's November 23, 2009

Intervention, or Alternatively, Motion to Dismiss Both the Intervention and the Complaint

1

Filed by the United States (Rec. Doc. 101)**;** (2) Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (Rec. Doc. 102); (3) Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103); and, (4)  Partial Motion to Dismiss For Failure to State Claim Upon Which Relief can be Granted, for Failure to Plead Fraud as Required by FRCP 9(b), and to Strike Certain Portions of Pleadings Filed by the Government (Rec. Doc. 104).

Defendants have attached materials in support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (Rec. Doc. 102) and Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103). In addition, the defendants have asked that they be allowed to conduct discovery on certain issues as set forth below.

### *Background*

This matter was filed on March 25, 2004 by Christopher T. Mallavarapu, on behalf of the United States, under the *qui tam* provisions of the False Claims Act,  31 U.S.C. § 3730, et seq. (FCA).  At the time it was filed, the named defendants were Acadiana Cardiology, LLC, Acadiana Cardiovascular Center, LLC, Mehmood Patel, M.D. and Our Lady of Lourdes Regional Medical Center, Inc. (Lourdes).

In his complaint, the relator alleged he was employed by Acadiana Cardiology, LLC as a physician, and during his employment he became aware the Patel defendants

were performing unnecessary, improper, and excessive medical services, for which they were billing federally funded health care programs.  The relator alleged he reported his concerns to Lourdes, who refused to investigate Patel's practices, and also continued to submit its own false claims for hospital services used by Patel.[1]

The complaint was accompanied by a motion to seal the record pursuant to the statutory requirements of 31 U.S.C. § 3730(b)(2), which was granted, and as required by the statute, the Attorney General and United States Attorney were served with the complaint.[2]  The government moved to recalculate the time during which it would be allowed to intervene on the basis that it was not served with the written disclosure statement.[3]  That motion was granted and the district court ordered that all filings were to remain under seal until further order of the court.[4]

On February 15, 2005, the first of five motions for extensions of time for the government to make its decision whether to intervene in the action and to extend the seal period was filed. [5]  In the motion the government represented that the relator's disclosure statement was received "on or about December 15, 2005," and for various reasons it

_____

[1] Rec. Doc. 1.

[2] Rec. Doc. 5.

[3] Rec. Doc. 6.

[4] Rec. Doc. 7.

[5] Rec. Doc. 9.

3

should be allowed an extension beyond the 60 day seal period set forth in 31 U.S.C. §3730(b)(2).  The motion was granted and the government was given until August 15, 2005 to intervene.[6]

On August 15, the government filed its second motion for extension of time for the case to remain under seal. [7] In that motion, the government represented that "the primary reason" for its first motion for extension was that its "factual inquiry was still proceeding" and that the factors which supported the first motion still existed.  Further, there was an ongoing discussion regarding global resolution with one defendant as well as the discovery of an additional party who had not yet been named as a defendant.[8]  A hearing was held on September 12, 2005 in which the district court granted the motion and gave the government until February 15, 2006 to decide whether to intervene.  The district court also ruled that all filings that were currently under seal were to remain under seal "unless and until [the] Court ordered otherwise."[9]

On December 20, 2005, the government filed an "Application for a Partial Lifting of the Seal," which was corrected on December 22, 2005, and which was the subject of a

---

[6] Rec. Doc. 11.

[7] Rec. Doc. 12.

[8] Id.

[9] Rec. Docs. 14, 15.

hearing held on January 11, 2006.[10]  In the motion, the government sought to have the seal partially lifted in order that it might disclose the complaint to Lourdes and the State of Louisiana, only, for purposes of settlement negotiations.[11]

At the hearing, the government's attorneys set forth that their intention was to use the lifting of the seal for the purpose of a settlement negotiation with Lourdes, however, they wished everything else to remain under seal due to the impending criminal proceeding against Patel that was before the Grand Jury.[12]

The district court ordered that the seal be "partially lifted to allow the United States to provide Defendant, Our Lady of Lourdes Regional Medical Center, Inc., and the State of Louisiana with a copy of the complaint."[13]  The order further set forth that the matter be kept under seal until further order of the Court, and in particular, ordered the two defendants for whom the seal was to be partially lifted not to disclose the existence of the case.[14]

On February 10, 2006, the government filed its third motion for extension of time for the case to remain under seal citing its ongoing and productive negotiations with

---

[10] Rec. Docs. 16, 17, 21.

[11] Id.

[12] Rec. Doc. 92, pages 9-15, 18-20.

[13] Rec. Doc. 22.

[14] Id.

Lourdes and the need to complete the ongoing criminal investigation of Patel before lifting the seal.[15]  The motion was granted the same day.[16]

On February 15, 2006, a secret indictment was issued against Patel, with the summons to be issued at a later date.[17]  A summons was issued on March 23, 2006, and returned executed on March 28, 2006.[18]

On April 3, 2006, the government filed its fourth motion seeking an extension of only 4 days in order to complete the settlement with Lourdes.[19]  The district court granted the motion, gave the government until April 7, 2006  to decide whether to intervene, and further ordered that "all filings currently under seal shall remain under seal."[20]

On April 10, 2006, the government filed its fifth motion for extension of time citing the need for an additional thirty days to complete its settlement with Lourdes.[21] The district court granted the motion, giving the government until May 7, 2006 in which to decide whether to intervene, and continued the order that all filings that were under seal

---

[15] Rec. Doc. 23.

[16] Rec. Doc. 24.

[17] See *Grand Jury Report* in Criminal Action No. 06-cr-60006, USA v. Mehmood M. Patel, U.S. District Court, Western District of Louisiana (Lafayette) (Rec. Doc. 4).

[18] See 06-cr-6006, Rec. Docs. 5 and 8.

[19] Rec. Doc. 25 which corrected Rec. Doc. 23 to accurately reflect filing date.

[20] Rec. Doc. 26.

[21] Rec. Doc. 27.

were to remain so unless the court ordered otherwise.[22]

On May 5, 2006, the government filed a combined notice of intervention and a motion to stay.  The document reads as follows:

UNITED STATES' NOTICE OF INTERVENTION AND MOTION TO STAY

> The United States of America respectfully notifies the Court that, pursuant to 31 U.S.C. §3730(b) and (c), the United States is electing to intervene in the above-captioned qui tam action.  In light of the pending parallel criminal proceeding against Mehmood Patel, M.D., the United States seeks to stay all further proceedings in the instant qui tam action against: Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., and Mehmood Patel, M.D., A Professional Medical Corporation, until conclusion of the pending criminal proceedings in Docket No. CR 06-60006.  The United States further notifies the Court that it has agreed in principle to a settlement with defendant Our Lady of Lourdes Regional Medical Center, Inc.  The parties anticipate finalizing a written settlement agreement within the next (90) days.

> Accordingly, the United States hereby requests that the Court lift the seal in the above-captioned case.  The United States requests that only the Complaint, this Notice and the related Court Orders be unsealed.  All other contents of the Court's file in this matter (including, but not limited to, any applications filed by the United States for an extension of the sixty-day investigative period or for any other reason) should remain under seal and not be made public or served upon the Defendants.  All papers hereafter lodged or filed in this action should not be sealed.  A proposed order accompanies this Notice.

> Relator has no objection to this motion to stay the proceeding against Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., and Mehmood Patel, M.D., A Professional Medical Corporation, until conclusion of the pending criminal proceedings.[23]

_____

[22] Rec. Doc. 28.

[23]Rec. Doc. 29.

7

An order submitted by the government with its motion, which was granted the same date, read as follows:

ORDER

On May 8, 2006, [sic] the United States filed a notice intervening in this action pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4) and a Motion to Stay all further proceedings in the instant qui tam action against: Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., and Mehmood Patel, M.D., A Professional Medical Corporation, until conclusion of the pending criminal proceedings in Docket No. CR 06-60006.

Upon due consideration of the notice and the papers on file in this action,

IT IS HEREBY ORDERED that,

1.      The complaint be unsealed;
2.      The Government's Notice of Intervention, and this Order shall be unsealed;
3.      All other papers or Orders on file in this matter shall remain under seal;
4.      The seal shall be lifted on all matters occurring in this action after the date of this Order;
5.      That all further proceedings in the instant qui tam action be stayed against: Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., and Mehmood Patel, M.D., A Professional Medical Corporation, until conclusion of the pending criminal proceedings in Docket No. CR 06-60006.[24]

The certificate of service, also filed by the government on May 5, 2006, indicates that the notice of intervention, motion to stay and executed order were served on counsel for the relator only.[25]

---

[24] Rec. Doc. 30.

[25] Rec. Doc. 31.

On September 25, 2006 Lourdes was dismissed from the litigation.[26]

On October 31, 2006, relator filed a motion to amend the complaint to name a new defendant, Lafayette General Medical Center, Inc. (Lafayette General). and seal the case but only as it related to the amended complaint against the new defendant.[27]   Just as was done with the original complaint, the amended complaint was filed on November 1, under seal, and service was withheld pursuant to 31 U.S.C. §3730(b)(2).[28]   The order signed by the district court, which tracked the language of the proposed order submitted by the relator, ordered that "the Record in this matter, as same pertains to the filing of the Amended False Claims Complaint, be SEALED until further Order of this Court."[29] Summons was issued to the United States by relator, but service was not made on the Patel defendants.[30]

There were no motions for extension of the seal period ever filed by the government. However, on July 19, 2007, the government filed an "Unopposed Request for Temporary Lifting of the Stay, for Partial Lifting of the Seal and for Expedited Consideration" in which it sought to temporarily lift the stay imposed on May 5, 2006

---

[26] Rec. Doc. 33.

[27] Rec. Docs. 34, 35.

[28] Rec. Doc. 39.

[29] Rec. Doc. 34-1, 36.

[30] Rec. Doc. 41.

9

(which was imposed only on the proceedings against the Patel defendants) for the "sole

purpose of considering the United States' request for partial lifting of the seal."[31]  Further,

the partial lifting of the seal was requested "only to facilitate settlement" with Lafayette

General.[32]  The order granting that motion, which was prepared by the government and

signed by the district court one day later, contained the following: "This matter, and all

contents of the Court's file in this action shall otherwise remain under seal and the matter

will otherwise remain stayed until further order by the Court."[33]

On December 14, 2007, the United States filed a Notice of Intervention and

Motion to Maintain Stay.[34]  That document read as follows:

### NOTICE OF INTERVENTION BY THE UNITED STATES AND MOTION TO MAINTAIN STAY

NOW INTO COURT, through undersigned counsel, comes the
United States for the purpose of giving notice that it has elected to intervene
in this qui tam matter with respect to the Relator's Amended False Claims
Act Complaint filed November 1, 2006 pursuant to 31 U.S.C. §§ 3730(b)
and 9 (c).

As the Court is aware, the United States previously intervened on
May 5, 2006 with respect to the Relator's original Complaint and
subsequently reached a settlement in that matter with Our Lady of Lourdes
Regional Medical Center.  The Relator's amended complaint added
Lafayette General Medical Center as a False Claims Act defendant.

---

[31] Rec. Doc. 44-1, page 1.

[32] Id., page 2.

[33] Rec. Doc. 45.

[34] Rec. Doc. 46.

The United States further moves the Court to maintain the current stay of proceedings with respect to Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovasular Center L.L.C. and Mehmood Patel, M.D., A Professional Medical Corporation until conclusion of the pending criminal proceedings in Docket No. CR 06-60006.  A proposed Order accompanies this Notice.

Relator has no objection to the Motion to Maintain Stay as requested.[35]

The motion to maintain the stay was granted on December 17, 2007, and a status conference was set for January 24, 2008.[36]  On January 11, 2008, the government filed a motion to unseal the amended complaint, which was granted on January 14, 2008.[37]   In the same Order, the court ordered that the case against the Patel defendants would remain stayed.[38]

At the hearing on January 24, the government confirmed that, although the case had been unsealed, it had not been served on the Patel defendants because of the stay.[39] The district court discussed with the attorneys for the government and relator its intention to have the Patel defendants served.  However, because of the "issue of publicity in the criminal case" and "trying to protect [Patel's] rights in the criminal proceeding," the

---

[35] Id.

[36] Rec. Doc. 47.

[37] Rec. Docs. 48, 49.

[38] Rec. Doc. 49.

[39] Rec. Doc. 93, pages 2-3.

district court felt it would not be "doing anything except adding fuel to the publicity fire" if the Patel defendants were served.  So, with the concurrence of both the relator and the government, the stay was maintained and service was withheld.[40]  The district court's concerns were justified given there was a hearing in the criminal proceeding on December 5, where multiple filings by Patel in August of 2007 cited press reports of the instant matter and other adverse pretrial publicity as a basis for seeking to expand voir dire and to possibly request a transfer of venue.[41]

On March 17, 2008, the government and relator filed a "Stipulation of Dismissal with Prejudice as to Lafayette General Medical Center, Inc." pursuant to their settlement agreement.[42]

On August 25, 2008, jury selection in the criminal case against Patel began, however, it was delayed until September 17 because of Hurricane Gustav.[43]  A motion to transfer venue due to pretrial publicity citing the same documents previously filed in August 2007 was filed, supplemented three times, and ultimately denied.[44]  The trial began on October 1, 2008 and on December 30, 2008, Patel was convicted on multiple

---

[40] Id., pages 4-5.

[41] See 06-cr-60006, Rec. Docs. 51, 53, 67, 166-1, 166-2.

[42] Rec. Doc. 51.

[43] See 06-cr-60006, Rec. Docs. 153, 157, 164.

[44] See 06-cr-60006, Rec. Docs. 166, 169, 170, 175 181.

counts.[45] Various post-trial motions were filed and denied and Patel was sentenced on June 4, 2009.[46]

On March 6, 2009, in the interim between Patel's conviction and sentencing, the instant case was re-assigned to Judge Rebecca Doherty. [47] A telephone status conference was held on April 9 in which the government confirmed the case had been unsealed but was stayed, that the Patel defendants had not been served, and that "within some reasonable period of time [the government] intends to notice its intervention in the remainder of the case at which point it will be relator's responsibility to serve the relator's complaint."[48]  In that conference the government also detailed the history of the case, including its position that the intervention in 2006 was only for the purpose of negotiating the settlement with Lourdes.[49]  Four days after that conference, on April 13, 2009, the relator filed a Motion to Lift Stay "for the purpose of Plaintiff being able to serve the Original and Amended False Claims Complaints on Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., Mehmood Patel, M.D., A Professional Medical

---

[45] See 06-cr-60006, Rec. Docs. 182, 262.

[46] See 06-cr-60006, Rec. Docs. 307, 311.

[47] Rec. Doc. 53.

[48] Rec. Doc. 98, page 3.

[49] Rec. Doc. 98, pages 4, 20.

Corporation, and Mehmood Patel, M.D."[50]  An order lifting the stay was issued on April

15, 2009, and the Patel defendants were served with the complaints on July 1, 2009.[51]

On August 26, 2009, the government filed a motion for extension of time to file

complaint upon intervention against the Patel defendants.[52] In its memorandum, the

government reiterated that it had only partially intervened in May of 2006 for the purpose

of confecting a settlement with Lourdes, and because of a change in counsel and the

possibility of new claims being brought against the Patel defendants, it requested an

extension until October 30, 2009.[53]  The district court granted the extension.  However, on

August 31, 2009, the district court withdrew the order pending receipt of a brief in

opposition to the motion for extension.[54]

At a status conference held on September 11, the history of the civil and criminal

litigation was presented to the Court. The district court granted the government's motion

for extension and gave the government until October 31, 2009 to file its intervention.[55]

On October 30, the government requested an extension because it had not yet

---

[50] Rec. Doc. 57.

[51] Rec. Docs. 60, 64, 66, 67, 68.

[52] Rec. Doc. 75.

[53] Rec. Doc. 75-1.

[54] Rec. Doc. 79.

[55] Rec. Doc. 99, page 31; Rec. Doc. 82.

14

received approval to file the complaint which had been prepared.[56] The motion was opposed by the Patel defendants who also filed a motion to dismiss.[57] A hearing was held on November 13 in which the district court denied the defendants' motion to dismiss as premature, and ordered the government to file its intervention no later than four o'clock Central Standard Time on November 23, 2009.[58]

On November 23, 2009, the government filed a document entitled United States' Notice of Intervention, and a Complaint, which was served upon counsel for defendants first, and then served upon defendants personally on January 14, 2010, thus curing the defect raised in the motion that is Rec. Doc. 105.[59]  The motions now before the court followed.

**I.**   ***Motion to Dismiss Government's November 23, 2009 Intervention, or Alternatively Motion to Dismiss Both the Intervention and the Complaint Filed by the United States (Rec. Doc. 101)***

In the motion to dismiss the intervention and complaint, the defendants argue the government intervened in the case in 2006, and therefore the recent notice of intervention should be dismissed as moot.  They argue the statute permits only two actions by the government upon expiration of the deadline to intervene – the government must intervene

---

[56] Rec. Doc. 84.

[57] Rec. Docs. 85, 87.

[58] Rec. Doc. 100, pages 92, 97.

[59] Rec. Docs. 95, 96.

or decline to intervene, and the plain language of the intervention shows the government chose to intervene in the action.  Moreover, the government asked for the stay in their motion to intervene and participated in the litigation as if it were a party after the notice of intervention. Therefore, the defendants urge the court to find the government intervened in the suit against the Patel defendants in 2006.

Alternatively, the defendants ask the court to dismiss the 2009 notice of intervention and complaint for failure to seek permission from the court to file the late intervention.  The defendants argue the statute allows tardy intervention only after a hearing before the court, in which the defendants must show good cause, and no such hearing has occurred.

In opposition, the government argues it did not intervene as to the Patel defendants until after the stay was lifted in 2009.  The 2006 notice of intervention was only a partial intervention as to defendant Lourdes, with whom they were in the process of negotiating a settlement.  At oral argument, counsel agreed the wording in the document should have expressly stated it was partial intervention, but that hindsight was 20/20, and the intent was a partial intervention as to Lourdes, and not as to the Patel defendants.

Moreover, the government argues several status conferences were had with the district judge prior to the government's 2009 intervention, and the court granted extensions of time for the government to file their complaint, implicitly finding good cause for the delayed intervention.  Therefore, the government argues, the court should

16

find it intervened as to the Patel defendants in 2009 after a showing of good cause.

The *qui tam* provision of the False Claims Act, 31 U.S.C.§3730, provides in pertinent part as follows:

(b) Action by private parties. –
* * *

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall—

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.
* * *
(c) Rights of the Parties to Qui Tam Actions.—

(1) If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be

17

bound by an act of the person bringing the action.

\* \* \*

(3) If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

With regard to whether the government can partially intervene as it contends it did, the defendants correctly point out the clear terms of sub-paragraph (4) of the statute do not provide for a "partial intervention."  However, subsequent jurisprudence in this circuit has recognized that the government can partially intervene, and when it does so, the relator is left to proceed against the defendants against whom the government has not intervened or to proceed with claims the government has chosen not to pursue.[60]  One

_____

[60] See e.g. *Federal Recovery Services, Inc. v. United States,* 72 F.3d 447, 449, n.1 (5th Cir.1996); *United States, ex. rel. Woodlee v. Science Applications International Corp.,* 2005 WL 729684 (W.D. Tex. 2005)*; United States ex. rel. Lam v. Tenet*

author has suggested the government actually has five options "expressly or impliedly provided for in Section 3730" three of which are pertinent here.[61]  The government may elect to intervene and take over the action, it may decline to intervene, or it may attempt to settle the action prior to formal intervention.[62] Even where the government has declined to intervene, and therefore, is not considered a "party," it may still participate on a limited basis where the government's interests are affected.[63]

Thus, the government could have partially intervened in 2006.  However, the clear language of the Notice of Intervention and Motion for Stay, along with the accompanying Order, both of which were submitted by the government, indicate no intention to partially intervene (as admitted by the government) and the undersigned will not accept the invitation to "re-write" the order issued by the district court to accomplish that purpose. Furthermore, the multiple motions filed by the government and  the colloquy between counsel and the court at the January 11, 2006 hearing indicate it was the government's intention to completely intervene in the suit although it wanted the proceeding stayed as

---

*Healthcare Corp.,* 481 F. Supp. 2d 689, 691 (W.D.Tex 2007); *United States, ex. rel. Becker v. Tools and Metals Inc.,* 2009 WL 855651 p.9, (N.D. Tex 2009); *United States, ex. rel. Magee v Lockheed Martin Corp.,* 2010 WL 972215 (S.D. Miss. 2010) and cases cited therein.

[61] Vol.1, John T. Boese, Civil False Claims and Qui Tam Actions,,§ 4.05(A)( 3rd ed. 2006).

[62] I d.

[63] See for example, *United States ex.rel. McCready v. Columbia/HCA Healthcare Corp.,* 251 F.Supp. 2d 114, 119 (D.D.C. 2003).

to the Patel defendants.

The dialogue between counsel for the government and the court on January 11 reflects no mention of the government's intention to file only a partial intervention in the litigation against Lourdes.[64]  Instead, the government's unequivocal intention was to partially lift the **seal** on the complaint,  show it only to Lourdes and the State of Louisiana in an attempt to gain their cooperation and settlement prior to the February 15, 2006 dismissal of the grand jury.  It appears the understanding of the court, which was confirmed by counsel, was the government would either indict Patel or not, then decide whether to join the qui tam action when the grand jury adjourned, or soon thereafter. The short colloquy with the court is illustrative of this intent:

|  |  |
|---|---|
| MR. WASHINGTON: | Yes, Your Honor.  I'll try to be brief also.  You know, there's a process we're following here. We have - - and I know you're very familiar with what this qui tam is all about.  The middle of February our Grand Jury expires.  It's kind of like the Scooter Libby thing in Washington. Some things have to occur by that time.  If not, we're going to have to go and do a whole lot of work all over again over the next year.  Our goal, however, is to meet a deadline associated with a criminal investigation which involves another party who's not here today in this qui tam.  In the interim here, we've got several parties that we're trying to reach a resolution with. |
| THE COURT: | Okay.  But help me with the party that's not |

_____

[64] Rec. Doc. 92, pages 7-13.

|                    | here today.  You said there's several parties here, one that's not here today. |
|--------------------|---|
| MR. WASHINGTON:    | Well, he's not supposed to be here today because this action is sealed. |
| THE COURT:         | Okay I misunderstood what you were saying.  Okay. |
| MR. WASHINGTON:    | Our Lady of Lourdes, Dr. Patel, and Dr. Patel's entity if I recall correctly.  We have in our office decided to pursue sort of a parallel investigation, if you will, of these entities, and we're ready to resolve one of those entities, but we can't do that resolution at this stage without allowing that entity to know that this qui tam has been filed because of the remedies that he gets to get, that Mr. Breaud gets, and must pursue as we go forward in our discussions with Lourdes. |

We're trying to sort of save some time rather than waiting until the 15th of February and then sort of piling this on at one time.  We've got one that's sort of sitting in the queue, but we can't – we're at the point where we can't go any further **without at least a partial lifting of this seal**, so that's why we filed this motion. And if the Court will indulge us with doing that, these other actions either have to occur, or, again, my office is going to end up wasting a lot of time because of the two years of investigation that we've engaged in involving, as I said, the other parties that are the subject of this qui tam that we're really not interested in lifting the seal on at this point.

| THE COURT:         | So what you're saying is, Judge, we've got a parallel criminal investigation going on? |
|--------------------|---|
| MR. WASHINGTON:    | Yes. |

THE COURT:               And I've got to assume however you handle
                         civil, criminal, you do whatever, your firewall,
                         or however that works.  Your about to come to a
                         conclusion on the criminal side.  What happens
                         on the civil side?

MR. WASHINGTON:          We have the defendants in this qui tam; Our
                         Lady of Lourdes, Dr. Patel, and Dr. Patel's
                         entity.  We have focused upon Lourdes over the
                         last six or eight months or so.  We are now at
                         the process where we need to resolve our issues
                         with Our Lady of Lourdes.  In order for us to
                         fully do that, Mr. Breaud's action must become
                         known to them because the statutes require that
                         they pay his attorney's fees, costs, et cetera.

THE COURT:               Yeah, but Mr. Washington, me wanting to help
                         you fully - - and, you know, not that I don't
                         want to help your colleague from Washington.  I
                         do.  I want to make sure I do the right thing
                         here. What's wrong with just saying, okay,
                         Judge, the order says you're going to turn it over
                         to them?  I mean,
                         you've got a month and a half.  I mean, turn it
                         over to them now, and if they don't settle, then
                         you do what you've go to do.  What's wrong
                         with that?  I mean, I'm not - -

MR. WASHINGTON:          Well, as I stand here today, the only thing that
                         sticks in the back of my head is we still have
                         this ongoing criminal investigation, and these
                         parties are - - I don't want to say they're tied up
                         together, but a lot of the information that comes
                         out of one case is going to be involved in
                         another case.

THE COURT:               I understand that, but how is it going to get any
                         better if I give you the option to turn it over?  I
                         mean, it's going to be the same situation. And
                         I'm telling you now, if you all make the

decision, based on what your colleague said, that these guys are really playing hardball now, or softball, we want to try to settle the deal, and y'all file a simple motion, and I give you permission to fax it in under seal - - which I think will go straight to my chambers, and I'll give you the authority now - - I'll sign off on it if you say we're getting ready to give it to them. I just don't want - - and, again, this may be a little sticking point, and it may not be a distinction with a difference for some people, but it is to me.

Before I give the government the option to do this - - when the government is ready to do it, I'm telling you now, based on what you've just said, I'm going to give the government the authority to do it, **but I don't want to give it to it in blank and y'all make a decision later. And, then, again, the government is going to make the decision of we're either going to join this or not, you're either going to indict or you're not going to indict, but this is all going to happen in about a month.**

MR. WASHINGTON:   **That's correct.**

          * * *

MR. WASHINGTON:   Your Honor, I just want to go back and make sure I understand and you understand what we're asking for today because I think we may be there.**What I need is for the seal to be lifted as to - - only as to- - Our Lady of Lourdes and to the State of Louisiana s that we may proceed with our discussions with them. Now, everything else would stay intact subject to, you know, the promises or obligations we've made to this Court before, and we'll come back again somewhere in the middle of February or thereabouts to resolve the rest of it, but that's what we're here to get today.**

* * *

| | |
|---|---|
| THE COURT: | So I'm going to sign something today that says you have the authority, and your representation as the United States Attorney for the government is we're getting ready to hand this over to the State and to Lourdes so we can continue our settlement negotiations. |
| MR. WASHINGTON: | That' correct. And the seal would stay intact as to everybody, including them, except that they will be able to see the information that affects them. |
| THE COURT: | Absolutely. And that's part of your negotiation with them. This is given to you under the order from the judge to give it to you so we could settle this thing, and even though you're not - - well, I guess they are a party whether they know it or not. I mean, you're not to give it to anybody else. That's part of your settlement negotiations so it doesn't screw up anything you're doing criminally right? |
| MR. WASHINGTON: | That's correct. |
| THE COURT: | Okay. I'm for that.[65] |

As previously indicated, the Notice of Intervention filed on May 5, 2006 and the accompanying Order prepared by the government show no indication there was intended to be a "partial intervention" or a declination of intervention as to any party.  First, the government specifically moved to stay any further proceedings against the Patel defendants.[66]  Second, the notice indicates the government had "agreed in principle to a

_____

[65] Rec. Doc. 92, pgs. 9-12, 18-20.  (Emphasis added).

[66] Rec. Docs. 29, 30.

settlement with defendant Our Lady of Lourdes Regional Medical Center, Inc." and it anticipated "finalizing a written settlement agreement within the next (90) days."[67] Keeping in mind Lourdes already had the complaint by way of the previous order granting a partial lifting of the seal per the government's request at the hearing held on January 11, the notice of intervention expressly moved the court to unseal the Complaint, the Government's Notice of Intervention, and the related Court Orders.[68]  Third, the government specifically moved that "all papers hereafter lodged or filed in this action not be sealed," and the Order prepared by the government and submitted to the court expressly provided the seal "shall be lifted on ALL matters occurring in this action after the date of this Order."[69]  Pragmatically, the only things not sought to be sealed were the applications for extensions previously submitted by the government although the order delineated all other papers or orders already on file.[70]

Thus, based on the clear language of the notice and order prepared by the government, the seal was lifted but the case was to be stayed against the Patel defendants. As such, while the government clearly intervened in the action, neither the government nor the relator was in a position to serve the Patel defendants, nor could the government

---

[67] Rec. Docs. 29.

[68] Rec. Docs. 22, 29.

[69] Rec. Docs. 29, 30.  (Emphasis added).

[70] Rec. Docs. 29, 30.

file its complaint without lifting the stay.  This *status quo* continued and is supported by

subsequent filings.

On September 20, 2006, a Stipulation of Dismissal With Prejudice as to Defendant

Our Lady of Lourdes Regional Medical Center, Inc. was filed. [71]   On October 31, 2006,

the relator filed a motion to seal the record along with a Motion for Leave to File

Amended False Claims Complaint against Lafayette General Medical Center, Inc.[72] The

United States of America, U.S. Attorney and U.S. Attorney General were served with the

amended complaint on January 29, 2007. No requests for extensions of the 60 day time

period to intervene or otherwise keep the seal in place were filed by the government until

July of 2007 when the government filed a motion to temporarily lift the stay and for a

partial lifting of the seal "only to facilitate settlement."[73]   Had the government only

partially intervened against Lourdes, once Lourdes was dismissed, the government would

have no longer been a party and the statute would have required extensions of time to lift

the seal and/or intervene against Lafayette General because the case had been stayed only

as to the Patel defendants. However, even though the stay order only applied to the Patel

defendants, the government stated in its motion:

> The United States will be conducting a settlement conference with
> defendants on July 29, 2007, and would like to be able at that time to inform

---

[71] Rec. Docs. 32.

[72] Rec. Docs. 34, 35.

[73] Rec. Doc. 44-1, p. 2.

Lafayette General Medical Center, Inc. of the existence of the sealed matter. This matter is currently stayed by order of the Court on May 5, 2006.  The United States makes the present motion to temporarily lift the stay for the sole purpose of considering the United States' request for partial lifting of the seal.[74]

The motion was granted on July 20, 2007 and the order lifted the stay for the "sole purpose of allowing consideration of the request for partial lifting of the seal."[75] Months later, in December of 2007, the government filed a Notice of Intervention and Motion to Maintain Stay.[76]  In that notice, the government states it "has elected to intervene in this qui tam matter with respect to the Relator's Amended False Claims Act Complaint filed November 1, 2006 pursuant to 31 U.S.C. §§ 3730(b) and (c)" and further states "[a]s the Court is aware, the United States previously intervened on May 5, 2006 with *respect to the Relator's original Complaint* and subsequently reached a settlement in that matter with Our Lady of Lourdes Regional Medical Center."  (Emphasis added).[77]  Once again, the government made no distinction between defendants in its intervention on the original complaint nor did it ever suggest that a partial intervention was contemplated or executed. However, the government did ask the court to maintain the stay of proceedings against the

---

[74] Rec. Doc. 44.

[75] Rec. Doc. 45.

[76] Rec. Doc. 46.

[77] Id.

Patel defendants until conclusion of the criminal case.[78]

The court granted the motion and scheduled a status conference for January 24, 2008.[79]  The colloquy between the court and counsel shows the court initially asked the **government** to serve the Patel defendants, but reconsidered because of concerns about publicity and the upcoming criminal trial.  However, it was never questioned and appears very implicit the government had in fact intervened in the litigation against the Patel defendants since they could not be in any position to serve them if they had not:

> THE COURT:          Do we have anybody here for the defendants?
>
> MR. ALEXANDER:       **No, Your Honor. The matter, although it's unsealed, has not been served because it's stayed under the Court's order. Although it's unsealed, it's not unstayed. It's stayed pending the outcome of the criminal trial which I believe is set for August. So the civil matter, although unsealed, is stayed, not been served, and –**
>
> THE COURT:          Well, I tell you what I want to do. I want to change that a little bit. I want to go ahead and I want **you** to get them served, and I will want to get the defendant to file whatever response the defendant is going to file, and - - well, let me think about that.
>
>                                  *     *     *
>
>           I'm concerned about the integrity of the criminal proceeding against the defendant in your civil case, and that being the case, I'd like to get this in a posture where as soon as that's

---

[78] Id.

[79] Rec. Doc. 47.

|  | over, we can tee it up.  And if he's going to have - - do you know who his lawyer is going to be, either one of you, in the civil case? |
|---|---|
| MR ALEXANDER: | I'm not aware of that, Your Honor. But I would like to add quickly, if I could, that for the reasons that the government offered at the time the matter was stayed, we would urge that it would maintain its current posture pending the outcome of the civil trial - - I mean the criminal trial. For the reasons the Court has articulated, we believe it makes imminently more sense to allow it to occur in that manner. |

*       *       *

|  |  |
|---|---|
| MR. BREAUD: | Your Honor, all the defendants who are not Dr. Patel are now out of the case, so the only case left is Dr. Patel basically and his dba clinic. So I think that the normal operating procedure, when there is a concurrent civil case with a criminal, that they don't want discovery in a civil case - - |
| THE COURT: | No, I wasn't going to allow that. What I was going to allow, though, is let him get served and file an answer. Then we'll just stay the thing at that point so it would be ready to tee up at least, but then I'm not doing anything except adding fuel to the publicity fire already if I do that, so I think Mr. Alexander's position is correct as you were trying to enunciate. I've just thought it through in my head and that's what I'll do.[80] |

Given the foregoing, the undersigned finds the government intervened in the case in 2006 when it filed its Notice of Intervention.  However, that does not lead to the relief sought by the defendants.  The defendants have cited no authority, nor has the

_____

[80] Rec. Doc. 93, pages 2-5.  (Emphasis added).

undersigned found any by independent research, which would call for a dismissal of the
2009 notice or complaint as "moot" even if the notice itself is redundant.

Under §3731 (c), once the government has elected to intervene, it may "file its
own complaint or amend the complaint of a person who has brought an action under
section 3730(b) to clarify or add detail to the claims in which the Government is
intervening and to add any additional claims with respect to which the Government
contends it is entitled to relief."

Because the case against the Patel defendants had been stayed, the government did
not file its own complaint or amend the relator's complaint, nor could it have, until the
stay was lifted. There is no statutory requirement that the notice of intervention and
complaint of intervention be simultaneously filed, and there is jurisprudence in this circuit
which has recognized the complaint can be filed subsequent to the notice. [81]  The district
court granted leave for the government to file a complaint of intervention in 2009 after
the stay had been lifted. Under Fed. R. Civ. P. 24(c), an intervention must set out "the
claim or defense for which intervention is sought."  This was also done in November
2009 after the stay had been lifted.

Alternatively, if the complaint is construed as an amendment to the relator's
complaint brought under Fed. R. Civ. P. 15(a)(2), the same result obtains.  Under this

---

[81] *United States ex rel. Woodlee v. Science Applications International, Corp.,* 2005
WL 729684, 1 (W.D. Tex. 2005).

rule, a party may amend its pleading with leave of court and "[t]he court should freely give leave when justice so requires."  The district court granted leave to file the complaint in 2009, however, the amendment to the complaint was not done, nor could it have been done, until the stay was lifted against the Patel defendants.

Whatever defenses the defendants may have to the complaint of the government, they may assert. However, dismissing the notice and complaint as "moot" is not one of them.   Therefore, the undersigned recommends that the Motion to Dismiss Government's November 23, 2009 Intervention, or Alternatively, Motion to Dismiss Both the Intervention and the Complaint Filed by the United States (Rec. Doc. 101) be denied.

## II. *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (rec. doc. 102) and Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103)*.

In the motions to dismiss relator's complaints based on failure to serve and prosecute, the defendants argue the government engineered various delays in service and prosecution of the action, so the defendants were not served with either of relator's complaints, the original filed in March 24, 2004, and the amended filed on November 1, 2006, until July 1, 2009.

The defendants argue the extensions of the sealing period of the original complaint were not based on good cause, and "[m]ost egregiously, although this matter was unsealed on May 5, 2006, and there existed no basis to withhold service upon the defendants from that date forward, more than three years passed from that date before

31

service upon defendants was attempted."[82]   The defendants argue "[t]he government's

failure to serve a False Claims Act *qui tam* defendant <u>after</u> the complaint has been

unsealed appears to be unprecedented in reported case law."[83]  Further,  regardless of

whether the government intervened at that time as to the Patel defendants, they should

have been served with the suit when it was unsealed, as the statute and legislative history

require service of the suit upon defendants as soon as possible:

> By providing for sealed complaints, the Committee does not intend to affect
> defendants' rights in any way.  Once the court has unsealed the complaint,
> the defendant will be served as required under Rule 4 of the Federal Rules
> of Civil Procedure and will not be required to respond until 20 days after
> being served.[84]

The defendants further argue the stay order was improperly issued, and does not

excuse the failure to serve the Patel defendants with the complaint.  They point out the

stay was issued on the government's own motion, the government chose the timing and

scope of the stay, and the order did not mention service - either excusing it or requiring it.

The defendants argue the government, or the relator, could have served them with the

complaint without any possible prejudice to the criminal case – "since all proceedings

were stayed, there was no risk that Dr. Patel could use the civil case to obtain discovery

---

[82] Rec. Doc. 102, p. 2.

[83] Rec. Doc. 102-1, p. 14.

[84] Rec. Doc. 102-1, p. 15, citing Senate Judiciary Committee, False Claims
Amendments Act of 1986, S.Rep. No. 345, 99th Cong., 2d Sess. 26 (1986), *reprinted in*
1986 U.S.C.C.A.N. 5266, 5289.

not otherwise available to him in the criminal matter (the usual justification for such a stay request)."[85]  Moreover, any prejudice to the government's criminal investigation ended when Dr. Patel was indicted on February 15, 2006.[86]

Additionally, the defendants argue the FCA contains its own stay provision limiting discovery when there are parallel criminal proceedings, and that provision limits such stays to 60 days, which may be extended only after a showing, *in camera*, that the Government has pursued the criminal investigation or prosecution "with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal. . . investigation or proceedings."[87]  The defendants argue there is no provision for an indefinite stay in the FCA, and "if Congress intended to allow a stay of all proceedings, or a stay of indefinite duration, then it would have included such language in the False Claims Act."[88]

In support of their position, defendants cite U.S. ex. rel. McCoy v. California Medical Review, Inc., 715 F.Supp. 967 (N.D.Cal. 1989), where the government intervened and requested a stay of the qui tam action pending completion of parallel criminal proceedings.  The court refused, finding no authority in the FCA to maintain the

---

[85] Rec. Doc. 102-1, p. 16.

[86] Rec. Doc. 103-1, p. 10.

[87] Rec. Doc. 102-1, p. 16, citing 31 U.S.C. § 3730(c)(4).

[88] Id., p. 17.

33

action under seal once the government had elected to intervene.  The court found the only

stay expressly authorized by the FCA was a 60 day stay of discovery and only upon

certain showings and conditions.  Defendants argue the court in McCoy recognized stays

may be possible in other civil suits, but found the FCA requirements for stays were clear

and gave the courts "only a limited power to slow civil suits."[89]

The defendants argue they have been prejudiced by the delay in service as several

patients of Patel have died since the initiation of the action and are no longer available as

sources of information.  Moreover, Patel was ordered to turn over his patient records

during the criminal trial and did not keep copies.  They also argue this case has been used

as a basis for withholding medical funds.  Patel specifically argues he should have been

able to present the existence of this multi-million dollar civil suit against him for

inclusion as financial information during the pre-sentence investigation in the criminal

litigation.  Without this information, the court had an incomplete financial picture, and

Patel could have argued this suit be taken into account at sentencing.

Finally, the defendants point out that even though the jury verdict against Dr. Patel

was returned on December 30, 2008, they were not served with relators original and

amended qui tam complaints until July 1, 2009, 183 days after trial was over.

The defendants argue the entire action should be dismissed due to the prejudice

---

[89] Rec. Doc. 102-1, p. 18, citing U.S. ex rel. McCoy v. California Medical Review, Inc., 715 F.Supp. 967, 970 (N.D.Cal. 1989).

caused defendants by the government and relator's failure to serve and prosecute the suit against them.  The defendants contend the statute of limitations has run on the claims, so in effect, any dismissal will be with prejudice.  Alternatively, the defendants ask the court allow discovery on the prejudice suffered by defendants prior to final ruling on the motions.

In opposition, the government argues since it did not intervene against the Patel defendants until November 23, 2009, service of the complaint of intervention on the Patel defendants on January 14, 2010, was timely.  Moreover, the government argues, "[d]efendants were timely served with the relators original and amended complaints on July 1, 2009, pursuant to FCA and the orders of the Court."[90]  The government argues "[d]efendants do not, and indeed, cannot cite to a single case which would support the throwing out of the government's claim based upon the Court's exercise of its considerable discretion in allowing the extensions of the sealing period and the stay of this action against Defendants."[91]

The government argues the McCoy case is inapposite to this case, because in that case the government intervened, and here it did not until November 23, 2009. Further, the McCoy case did not address a court's inherent power to stay proceedings.  The government argues the court was entitled in this case to stay the proceedings against the

---

[90] Rec. Doc. 123, p. 6.

[91] Id., p. 7.

defendants as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. . . [and] 'how this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"[92]

Alternatively, the government argues, even if service was untimely, the court should extend the time for service as provided by Fed. R. Civ. P. 4(m). The government argues there was good cause for the delay in service, as the court had stayed the case as to the Patel defendants, and the Patel defendants could not be served until the court lifted the stay in April of 2009.

The False Claims Act provides that "[t]he defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure."[93] The statute thus contemplates that upon unsealing, the complaint will be served pursuant to Rule 4 which provides in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for

---

[92] Rec. Doc. 123, pages 17, 18, citing Landis v. North American Co., 299 U.S. 248, 254 (1936).

[93] 31 U.S.C. §3730(b)(3).

the failure, the court shall extend the time for service for an appropriate period.

The record reflects and the undersigned has found that the seal was lifted by order of the court on May 5, 2006 and the defendants were not served until 2009. Therefore, on its face, service does not appear to be timely under Rule 4.  However, 31 U.S.C. §3730 (b)(2) specifically provides that the complaint "shall not be served on the defendant until the court so orders." The record is clear that the case against the Patel defendants was stayed by order of the court presiding over both the instant case and the criminal proceeding since May of 2006.  The record is also clear that the district court was very concerned with protecting the rights of Dr. Patel in the criminal proceeding, and that the defense in the criminal case tried to use the instant litigation, and concomitant publicity associated with it, as a basis to seek a change in venue and other relief in the criminal trial.[94]

The defendants argue that the stay was improvidently obtained by the government. However, when the interests of justice require it, the district court has discretion to stay parallel civil proceedings pending the outcome of the criminal litigation particularly where the issues in both cases overlap and the defendant has been indicted.[95] Furhtermore, contrary to the argument asserted by the defendants, under 31 U.S.C.

_____

[94]See Criminal Action 06-cr-60006, Rec. Docs. 51, 53, 59, 170, 175.

[95]*United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763,770 (1970); *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163 (1936); *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962).

§3730(c)(4) the court may extend the 60 day period for discovery "upon a showing in camera that the Government has pursued the criminal or civil investigation **or proceedings** with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation **or proceedings**." (Emphasis added).

There is no evidence that the government was not pursuing the criminal proceedings with reasonable diligence. Quite the contrary, the criminal record is composed of numerous volumes, was vigorously contested on multiple fronts by Patel and the trial lasted several months.  The interference of this case with the criminal proceedings is the publicity associated with both and it was manifested in the motions for expanded voir dire and change of venue, supplemented three times, and referenced by the district court in the status conference in this matter in January 2008.[96]  The district court was uniquely suited to determine the proprietary of the stay and the undersigned finds no factual basis to suggest the government was in any way unduly influencing the court's decision to stay the instant matter.

Under Rule 4(m), the burden is on the plaintiff to show cause why service was not effected timely and thus why the suit should not be dismissed. McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir.1993).  To establish good cause, the plaintiff must show "at least as much as would be required to show excusable neglect...." Winters v. Teledyne Movible

---

[96]See footnotes 41 and 44, *supra*.

Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir.1985). "[S]imple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice...." Id. In addition, "some showing of 'good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified' is normally required." Id. (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (1969)); see also McDonald v. United States, 898 F.2d 466, 467-68 (5th Cir.1990).

In this case, the stay and withholding of service in order to protect the rights of Patel in the criminal proceeding, both of which were authorized by statute, effectively extended the time for service. Alternatively, the specific orders of a district judge presiding over both cases staying the case and prohibiting service is well within the parameters of "good cause" necessary for the court to extend the time for service under Rule 4.

The stay was lifted on April 15, 2009.[97] The defendants were served with the original and amended complaints on July 1, 2009.[98]  The Complaint of the government was filed on November 23, 2009.[99]  The defendants were served with that complaint on January 14, 2010.[100]   Service of the original and amending complaints was made well

---

[97] Rec. Doc. 60.

[98] Rec. Docs. 64, 66, 67, 68.

[99] Rec. Doc. 95.

[100] Rec. Docs. 114, 115, 118, 119.

39

within 120 days of the stay being lifted. Likewise, service of the complaint of the government was also made within 120 days of its filing.  Therefore, the undersigned recommends the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (Rec. Doc. 102) be denied.

With regard to the motion to dismiss under Fed. R. Civ. P. 41(b), the statute allows the district court to dismiss an action upon the motion of a defendant, or upon its own motion, for failure to prosecute. Morris v. Ocean Systems, Inc., 730 F.2d 248, 251 (5th Cir.1984); Rogers v. Kroger Co., 669 F.2d 317, 319-20 (5th Cir.1982).  Rule 41(b) reads as follows:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits.

Dismissals with prejudice for failure to prosecute are indicated only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile.  Callip v. Harris County Child Welfare Dept., 757 F.2d 1513, 1519-21 (5th Cir.1985). Price v. McGlathery, 792 F.2d 472, 474 (5th Cir.1986).  Additionally, in most cases where the Fifth Circuit has affirmed dismissals with prejudice, it found at least

40

one of three aggravating factors: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." McGlathery, 792 F.2d at 474; Callip, 757 F.2d at 1519.

From the outset, the relator and the government cannot be accused of failing to comply with a court order. Quite the contrary, the undersigned finds both parties were complying with the explicit orders of the district court. Therefore, on its face the undersigned finds the provisions of Rule 41 are not applicable. Further, there is no evidence of contumacious conduct on the part of the government or the relator and the defendants have not shown any of the elements to warrant dismissal are present. Therefore, the undersigned recommends the Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103) also be denied.

**III.**   ***Partial Motion to Dismiss For Failure to State Claim Upon Which Relief can be Granted, for Failure to Plead Fraud as Required by FRCP 9(b), and to Strike Certain Portions of Pleadings Filed by the Government (Rec. Doc. 104).***

In this motion, the defendants ask the court to strike certain parts of the 2009 complaint by the government, and to dismiss certain claims made for failure to plead fraud with specificity as required by Fed. R. Civ. P. Rule 9(b).  Specifically, defendants argue they cannot, from the face of the complaint, understand which false claims they are accused of making.  Moreover, defendants argue there is a document filed in the record under seal that lists several patients of Patel who had various procedures performed.

41

However, defendants complain the exhibit is not referenced as an attachment to the complaint in the complaint itself (although it is, in fact, referenced as a separate exhibit filed under seal as it contains names of patients), and defendants are unable to tell whether these are claims alleged against defendants or not.  Defendants also ask the court to strike language in the complaint which is "exemplary."

Rule 9(b) requires that circumstances constituting fraud be "stated with particularity." The Fifth Circuit has long held that this requires the plaintiff to allege the "who, what, when, where and how" of the alleged fraud.[101]

The complaint of the government provides explicit detail regarding defendants' performance of various medical procedures for which they were reimbursed by Medicare from January 1, 2000 until December 31, 2003.[102] The procedures themselves are described in detail, the dates of service are itemized, the date the claims were submitted are itemized, the amounts paid are itemized and the exhibit that is not attached to the complaint, but is referenced and filed under seal, lists the names of the patients and their HIC numbers.  The procedures were allegedly medically unnecessary, but were performed anyway by the defendants who knowingly submitted bills for payment.

Likewise, to the extent the complaint utilizes the phrase "by way of example", the

---

[101] *United States ex rel. Willard v Humana Health Plan of Texas, Inc.,* 336 F.3d 375, 384 (5th Cir. 2003); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994).

[102] Rec. Doc. 37.

undersigned finds that this is not the type of allegation that should be stricken inasmuch as it is not scandalous or otherwise improper.  Rather, it puts the defendants on notice of the claims against them as part of the universe of claims which may exist under the theories alleged. Therefore, the undersigned finds the allegations of the complaint meet the requirements of Rule 9(b) and recommends defendants' Partial Motion to Dismiss For Failure to State Claim Upon Which Relief can be Granted, for Failure to Plead Fraud as Required by FRCP 9(b), and to Strike Certain Portions of Pleadings Filed by the Government (Rec. Doc. 104) be denied.

### *Recommendation*

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that defendants' Motion to Dismiss Government's November 23, 2009 Intervention, or Alternatively Motion to Dismiss Both the Intervention and the Complaint Filed by the United States (Rec. Doc. 101); Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (Rec. Doc. 102); Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103); and, Partial Motion to Dismiss For Failure to State Claim Upon Which Relief can be Granted, for Failure to Plead Fraud as Required by FRCP 9(b), and to Strike Certain Portions of Pleadings Filed by the Government (Rec. Doc. 104) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss Complaint

Without Prejudice for Lack of Personal Jurisdiction over Defendants Due to Failure to Serve Defendants with Process Pursuant to Federal Rule of Civil Procedure 12(b)(5) (Rec. Doc. 105) be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Lafayette, Louisiana, this 13th day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)