WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 3 0 2010

TONY R. MOORE, CLERK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ET AL | CIVIL ACTION NO. 04-732 |
| VERSUS | JUDGE DOHERTY |
| CHRISTOPHER T MALLAVARAPU, ET AL | MAGISTRATE JUDGE HANNA |

### JUDGMENT

This matter was referred to United States Magistrate Judge Patrick J. Hanna for Report and Recommendation. After an independent review of the record, and considering the objections filed, this Court concludes that the Report and Recommendation of the Magistrate Judge is correct and adopts the findings and conclusions therein as its own, subject to the following supplementation and modification:

"The False Claims Act prohibits, in relevant part, 1) the presentment of a false claim to the Government, 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies to get a false claim paid." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 183 (5th Cir. 2009) (citing 31 U.S.C. § 3729(a)(1-3)).

> The Act is remedial, first passed at the behest of President Lincoln in 1863 to stem widespread fraud by private Union Army suppliers in Civil War defense contracts. It is "intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side." To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators, who serve as a "posse of ad hoc deputies to uncover and prosecute frauds against the government."

Id. (quoting S. Rep. No. 99-345, at 11 (1986), U.S. Code Cong. & Admin.News 1986, pp. 5266, 5276 (quoting United States v. Griswold, 24 F. 361, 366 (D.Or.1885)); and United States ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr., 961 F.2d 46, 49 (4th Cir.1992)). When a private

person (or relator) brings a false claims suit on behalf of the government, the suit is referred to as

a "qui tam" action.[1]  The qui tam provisions of the False Claims Act, pertinent to the matter now

before this Court, state as follows:

> **(b) Actions by private persons.--(1)** A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
>
> **(2)** A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
>
> **(3)** The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.
>
> **(4)** Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall--
>
> > **(A)** proceed with the action, in which case the action shall be conducted by the Government; or
> >
> > **(B)** notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.
>
> . . . .

---

[1]"Qui tam" is an abbreviation for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who as well for the king as for himself sues in this matter." Black's Law Dictionary 1262 (8th ed.2004).  In a qui tam action, the relator is typically entitled to a portion of any recovery. *See e.g.*  31 U.S.C. 3730(d).

(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

31 U.S.C.A. § 3730 (footnote omitted).

As noted by the Fifth Circuit, "[t]he Act forces the government to decide at the outset whether it wants to become an active litigant or to let the relator represent its interests." Searcy v. Philips Electronics North America Corp., 117 F.3d 154, 156 (5th cir. 1997)(citing 31 U.S.C. § 3730(b)(2)).  The Act "further allows the government to intervene at any time on a showing of good cause." Id. (citing 31 U.S.C. § 3730(c)(3)).

The Legislative History of the statute provides the following pertinent information:

Subsection (b)(2) of section 3730 provides, as under current law, that the Government be served with a copy of the complaint filed by a person under this subsection as well as 'substantially all material evidence.' Paragraph (2) is amended to impose a new requirement that all *qui tam* actions will be filed in camera and remain under seal for at least 60 days, and to clarify that the 60 day period does not begin to run until both the complaint *and* material evidence are received—a point of some, albeit minor, confusion previously.

The Committee's overall intent in amending the *qui tam* section of the False Claims Act is to encourage more private enforcement suits. The Justice Department raised a concern, however, that a greater number of private suits could increase the chances that false claims allegations in civil suits might overlap with allegations already under criminal investigation. The Justice Department asserted that the public filing of overlapping false claims allegations could potentially 'tip off' investigation targets when the criminal inquiry is at a sensitive stage. While the Committee does not expect that disclosures from private false claims suits would often interfere with sensitive investigations, we recognize the necessity for some coordination of disclosures in civil proceedings in order to protect the Government's interest in criminal matters.

Keeping the *qui tam* complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action. Nothing in the statute, however, precludes the Government from intervening before the 60-day period expires, at which time the court would unseal the complaint and have it served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

By providing for sealed complaints, the Committee does not intend to affect defendants' rights in any way. Once the court has unsealed the complaint, the defendant will be served as required under Rule 4 of Federal Rules of Civil Procedure and will not be required to respond until 20 days after being served. . . . The initial 60-day sealing of the allegations has the same effect as if the *qui tam* relator had brought his information to the Government and notified the Government of his intent to sue. The Government would need an opportunity to study and evaluate the information in either situation. Under this provision, the purposes of *qui tam* actions are balanced with law enforcement needs as the bill allows the *qui tam* relator to both start the judicial wheels in motion and protect his own litigative rights. If the individual who planned to bring a *qui tam* action did not file an action before bringing his information to the Government, nothing would preclude the Government from bringing suit first and the individual would no longer be considered a proper *qui tam* relator. Additionally, much of the purpose of *qui tam* actions would be defeated unless the private individual is able to advance the case to litigation. The Committee feels that sealing the initial private civil false claims complaint protects both the Government and the defendant's interests without harming those of the private relator.

Subsection (b)(3) of section 3730 establishes that the Government may petition the Court for extensions of both the 60-day evaluatory period and the time during which the complaint remains under seal. Extensions will be granted, however, only upon a showing of 'good cause'. The Committee intends that courts weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation. The Committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision. Consequently, 'good cause' would not be established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint. **While a pending criminal investigation of the allegations contained in the *qui tam* complaint will often establish 'good cause' for staying the civil action, the Committee does not intend that criminal investigations be considered an automatic bar to proceeding with a civil fraud suit.**

> **The Committee believes that if an initial stay is granted based on the existence of a criminal investigation, the court should carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from the civil complaint or processing of the *qui tam* litigation.**

S. REP. 99-345, 23, 1986 U.S.C.C.A.N. 5266, 5288-5290, 1986 WL 31937, 21 - 23 (emphasis

added)

## Timeline

The following is a timeline of the pertinent events in this matter:

3/25/**04**     Complaint is filed by relator against Acadiana Cardiology, LLC, Adadiana Cardiovascular Center, LLC, Mehmood Patel, M.D. ("Patel defendants"), and Our Lady of Lourdes Regional Medical Center, Inc.

Motion to Seal Record filed, pursuant to 31 USC 3730(b)(2)

5/25/04     Government files "*Ex Parte* Status Report," noting relator had not served the "required written disclosure statement upon either the Attorney General or the United States Attorney. . . [and] [t]hus, the sixty-day seal period has not yet begun to run.[2]

---

[2]In its status report, the government concludes with:

> On May 5, 2004, the undersigned sent correspondence to Relator's counsel, Alan K. Breaud, informing him that he must serve the United States with the required written disclosure statement, and that the sixty-day time period would not begin to run until service of substantially all material evidence and information has been made. . . .

> In order to avoid any confusion about when the sixty-day time period begins to run and to avoid an inadvertent lifting of the seal, the United States respectfully requests that the Court enter the attached order directing the United States to notify the Court when the written disclosure statement has been properly filed upon the United States.

[Doc. 6, pp. 2-3] Defendants note the status report was not filed until "the day after the last day of the 60-day sealing period. . . ." [Doc. 102-1, p.7] They further argue (in part):

> Congress conditioned the extension of the sealing period upon a showing of good cause. The government avoided the necessity of making such a showing here, and did so under questionable circumstances. There is no evidence suggesting that the government gave the Relator a deadline to comply with the statute; a May 5, 2004 letter from the government to the Relator's counsel, attached to the government's "Status Report"

5/27/04    Judge Melançon issues an Order[3] noting: "The sixty-day time period established by 31 U.S.C. § 3730 does not begin to run until receipt of . . . [the written disclosure statement] by the United States," and ordering (1) "the Complaint and any other filings [are to] remain under seal until further order of this Court," and (2) "the United States shall notify the Court when the Written Disclosure Statement has been properly served upon the United States." [Doc. 7]

2/15/05    The government moves for extension of 180 days to determine whether or not it will intervene and for the case to remain under seal.[4]

---

(Document No. 6) stated "You will file a disclosure statement as required by 31 U.S.C. § 3730(b)(2). Until this disclosure statement is filed, the United States maintains that the 60-day period has not begun to run." More than seven months would pass from the date of this letter before the Relator filed the disclosure statement.

Although under the terms of the statute the sealing period expired on May 24, 2004, the case remained under seal, and the government did not file its first motion seeking an extension of the sealing period until February 15, 2007 (Document No. 9) – almost 9 months after the Original Complaint was filed. This pleading stated that the Relator's written disclosure was served on the government on December 15, 2007, but it offered no explanation for the Relator's failure to comply with the statutory requirement. However, statements made in a May 5, 2004 letter from Assistant United States Attorney Jennifer Drago to the Relator's counsel (contained in Document no. 6) suggest that the government was allowing Relator to delay the required filing of the disclosure statement in an attempt to extend the initial sealing period while avoiding the need for a motion for an extension by the government, which would have required a showing of good cause for the extension. . . .

Defendants intend to explore this issue in discovery – this is one of the reasons that defendants have requested that the disposition of this motion be delayed pending discovery. The extension of the sealing period without a government motion and showing of good cause was improper; If as defendants suggest the timing of the service of Relator's written disclosure was manipulated to extend the sealing time and the intervention deadline then the extension was doubly wrong. It is known that the government had access to Relator and interviewed him as needed, and there is no evidence suggesting that the government ever demanded that Relator serve the written disclosure or threatened to seek dismissal of his case as a result of Relator's failure to comply with the statute.

[Doc. 102-1, pp. 9-11 (footnotes omitted)]

[3]Judge Melançon was assigned to this case until February 13, 2009. On or about that date, Judge Melancon moved to Senior status by way of disability, and the case was reassigned to the undersigned.

[4]To satisfy the requirement of "good cause" in order to obtain the extension, the government stated as follows:

| 2/17/05 | Judge Melançon Rules "good cause having been shown, it is hereby ORDERED that the United States shall have up to and including August 15, 2005, in which to decide whether to intervene in this *qui tam* action" and that "all filings currently under seal shall remain under seal, unless and until this Court orders otherwise." [Doc. 11] |
|---|---|
| 8/15/05 | The government moves for additional extension of 180 days to determine whether or not it will intervene and for the case to remain under seal.[5] |
| 9/12/05 | A hearing is held on the government's motion for extension.[6]  The same day, the government's motion is granted, and an Order issues stating the "United States shall have up to and including February 15, 2006, in which to decide whether to intervene . . . [and] all filings currently under seal shall remain under seal, unless and until this Court orders otherwise." [Doc. 12-2] |

---

The United States is still in the process of examining the relator's claims for purposes of determining liability and damages.  The United States' experts are continuing their review of patient files to determine the inappropriateness of medical procedures and the losses sustained by the government in connection therewith.  The relator continues to work with the government in this process.  In addition, the government's investigation has expanded beyond the defendants named by the relator to include another hospital in Lafayette, Louisiana.  At the present time, it is anticipated that the disclosure of this *qui tam* litigation will have a significant impact upon the local medical community involved in cardiology specialties.  Additionally, the relator is a Lafayette cardiologist with significant business and professional ties in the area.  Disclosure of the *qui tam* suit may have significant impact upon the relator's practice.  Further still, it is in the better interests of the United States to have a completed investigation so that it may simultaneously cause the seal to be lifted and enter into settlement agreements.

[Doc. 9, p.3]

[5]To satisfy "good cause" for its extension, the government argued "the factors which supported its initial request for an extension of the sealed period are continuing to this date. . . ." [Doc. 12, pp. 2-3]  The government then repeats those "factors" contained in their previous motion for extension, with the only notable differences being that the investigation of the other hospital was "nearing completion," and "the government's inquiry with respect to one of the named defendants is in its final stages," with "said defendant . . . indicat[ing] that it desires a global resolution of the government's claims against it, including resolution of any civil, criminal, and administrative remedies that the government may have." [Doc. 12, pp. 1-2; *see also* Doc. 9, p.3]

[6]Although it appears a court reporter was present at the hearing, no transcript of the hearing appears on the docket sheet or within the record nor has either party provided a copy or reference to a transcript.  The minutes of the hearing are minimal; they are of no benefit to the issues currently before this Court. [*See* Doc. 14 ("This case came on for hearing on a Motion For Extension of Time [Doc. #12] filed August 15, 2005, on behalf of the USA, argued and IT IS ORDERED that said motion is hereby GRANTED."]

| | |
|---|---|
| 12/20/05 | The government files an "Application (Unopposed by Relator) for a Partial Lifting of the Seal," so that it could disclose the complaint to Our Lady of Lourdes Regional Medical Center, Inc. for settlement negotiations and to determine if Lourdes had any "other information pertinent to the United States' decision whether to intervene." [Doc. 16-1, .2] |
| 1/11/**06** | A hearing is held on the government's motion for a "partial lifting of the seal." The minutes of the hearing reflect the motion was denied, and the government was ordered to "re-file the motion and order in accordance with this Court's oral ruling."[7] [Doc. 21] |
| 1/18/06 | An Order issues (which is dated January 11, 2006), granting the government's previously denied motion for partial lifting of seal. The Order further provides "this matter shall remain under seal until further order of the Court." [Doc. 22] |
| 2/10/06 | The government files a motion for an additional 45 day extension of time in which to decide whether to intervene and for the case to remain under seal.[8] |
| | The motion is granted the same day.  The Order granting the motion states "the United States shall have an additional forth-five [sic] (45) days, up to and including April 3, 2006, in which to decide whether to intervene in this *qui tam* action . . . [and] that all filings currently under seal shall remain under seal, unless and until this Court orders otherwise." [Doc. 24] |
| **2/15/06** | **A criminal indictment is returned against Dr. Patel for health care fraud.** [*See* Case No. 06-60006, Doc. 1] The "secret indictment[] is ordered sealed and withheld from the public until such time as the defendant[] come[s] into federal custody." [Id. at Doc. 4] |
| **3/23/06** | **A summons is issued in the criminal case against Dr. Patel.** [Id. at Doc. 5] |

---

[7]Of interest to this Court is the fact that at the time of that hearing, the former United States Attorney for the Western District of Louisiana argued to Judge Melançon that his office at that point had spent "two years of investigation" into this matter. [Doc. 92, p. 10]

[8]In support of the "good cause" requirement, the government again states it is close to settling its claims against Lourdes, Lourdes "has indicated that it desires a global resolution of the government's claims," and that "with respect to the other named defendant, the United States is actively pursuing a criminal investigation in addition to its investigation of civil liability under the False Claims Act and common law causes of action." [Doc. 23, p.2] The government further stated: "The United States believes that the requested extension of 45 days will provide the Government with sufficient time to reach a conclusion with regard to its criminal investigation without jeopardizing the prosecution and outcome of that investigation by prematurely commencing a civil action against the defendant." [Id.]

**3/28/06**      **The summons is returned executed.**[9] [Id. at 8]

4/3/06      The government files a motion for an additional extension of 4 days to determine whether to intervene and for the "action to remain under seal."[10]

The government's motion is granted the same date. The Order states "the United States shall have an additional four (4) days, up to and including April 7, 2006, in which to decide whether to intervene," and that "all filings currently under seal shall remain

---

[9]At this point, it appears the government's prior reasons for withholding service upon the Patel defendants in the civil case no longer exist, as the government had made a decision to indict Dr. Patel for crimes arising out of the same set of operative facts (and thus, it would seem the government should have had sufficient information to determine whether or not it wished to pursue civil claims against the Patel defendants). Dr. Patel was, at this point in time, aware of the criminal charges against him and thus, it would seem there was no longer a danger of "jeopardizing the prosecution and outcome of the investigation by prematurely commencing a civil action" against the Patel defendants.

[10]The motion first requests an extension of 30 days [Doc. 25, p.1], but later states the request is for a 4 day extension [Id. at p. 2] In correspondence from Jennifer Drago (former counsel for the United States in this matter) to Judge Melançon, she states:

As we discussed per telephone last week, the seal in the referenced lawsuit expires on today, April 3, 2006 and you have indicated that you will grant an extension on lifting the seal and for filing the United States' decision whether to intervene until Friday, April 7, 2006 rather than granting the Government's request for a 30-day extension. I have enclosed a motion and order with respect to the 4-day extension.

It is my understanding that Bernard Boudreaux, counsel for Our Lady of Lourdes Regional Medical Center, has requested permission to speak to you outside the presence of the relator's counsel and the U.S. Attorney with regard to an extension in this action. Mr. Boudreaux states that he does not plan to discuss the substance of the lawsuit with you. I have discussed this request with the U.S. Attorney . . . and relator's counsel. . . . Neither . . . objects to a discussion between you and Mr. Boudreaux about the Government's request for a 30-day extension.

[Id. at 4] In support of "good cause" for the extension, the government stated:

[I]t has negotiated the terms of a settlement with the defendant, Our Lady of Lourdes Regional Medical Center, Inc., but the parties have been unable to reach a resolution as to all claims prior to the current deadline. Therefore, the United States Attorney has sought the approval from the appropriate officials at the Department of Justice to intervene in this lawsuit. *However, the United States Attorney will require a very brief extension in order to obtain such approval and prepare the necessary documents therefor.*

[Id. at 2(emphasis added)] No mention is made as to why the matter should remain under seal (and unserved) as to the Patel defendants.

under seal [,] including the April 3, 2006 letter to the Court from AUSA Katherine W. Vincent that was hand delivered to the Court this date[,] unless and until this Court orders otherwise." [Doc. 26]

4/10/06     The government files a motion for extension of 30 days to determine whether to intervene and for all documents to remain under seal.[11]

The motion is granted by Judge Melançon the same day, and states the government "shall have an additional thirty (30) days, up to and including May 7, 2006, in which to decide whether to intervene in this *qui tam* action," and further states "all filings currently under seal shall remain under seal, unless and until this Court orders otherwise." [Doc. 28]

5/5/06     The government files a Notice of Intervention and Motion to Stay, stating it "is electing to intervene in the above-captioned <u>qui tam</u> action," and seeks "to stay all further proceedings in the instant <u>qui tam</u> action . . . until conclusion of the pending criminal proceedings [against Dr. Patel]." [Doc. 29, p.1] The government further requests the seal be lifted as to certain documents, but that the seal remain in place as to other documents.[12] [Id. at pp. 1-2]

The same day, an Order issues stating:

     1.     The complaint is to be unsealed;

     2.     The Government's Notice of Intervention, and this Order shall be unsealed;

     3.     All other papers or Orders on file in this matter shall remain under seal;

---

[11]In support of "good cause," the government states:

[T]he government's inquiry with respect to the defendant, Our Lady of Lourdes Regional Medical Center, Inc., appears to be nearing conclusion through a negotiated settlement of all claims. Said defendant has indicated that it agrees to the terms of the settlement proposed by the United States Attorney. (See attached, Exhibit A).

     The United States seeks this extension to allow the parties to prepare and execute settlement documents approved by the parties.

[Doc. 27, p.2]

     [12]The Notice of Intervention is not "accompanied by a pleading that sets out the claim or defense for which intervention is sought," as required by Fed. R. Civ. P. 24(c).

    4.    The seal shall be lifted on all matters occurring in this action after the date of this Order;[13]

    5.    That all further proceedings in the instant <u>qui tam</u> action be stayed against: Mehmood Patel, M.D., Acadiana Cardiology, L.L.C., Acadiana Cardiovascular Center, L.L.C., and Mehmood Patel, M.D., A Professional Medical Corporation, until conclusion of the pending criminal proceedings  in Docket No. CR 06-60006.

[Doc. 30, pp. 1-2]

The same day, the government files a certificate of service stating: "I certify on this 5[th] day of May, 2006, copies of the United States' Notice of Intervention and Motion to Stay and executed Order, have been forwarded by First Class Mail properly address and postage prepaid to . . . [relator's counsel]." [Doc. 31][14]

**5/11/06**    **Dr. Patel makes his initial appearance and is arraigned in the criminal case against him.** [Case No. 06-60006, Doc. 12]

9/20/06    A "Stipulation of Dismissal with Prejudice as to Defendant Our Lady of Lourdes Regional Medical Center, Inc." is submitted on by counsel for Lourdes, the government and relator, along with a proposed order.

9/25/06    An Order issues approving the settlement, dismissing the case against Our Lady of Lourdes with prejudice, and stating "[t]he status of the above-captioned case or any claims therein with respect to any defendant other than OLOL are not in any way affected or changed by this Order." [Doc. 33, p.1]

10/31/06    Relator files a motion to amend the complaint to add Lafayette General Medical Center, Inc. as a defendant, and a motion "to SEAL THE RECORD in these proceedings REGARDING THE FILING OF THE AMENDED FALSE CLAIMS COMPLAINT as mandated by 31 U.S.C. § 3730(b)(2). . . ." [Doc. 34, p.1; Doc. 35]

11/1/06    An Order issues granting the motion to amend the complaint, and a separate order issues stating, "that the Record in this matter, as same pertains to the filing of the Amended False Claims Complaint, be SEALED until further Order of this Court." [Doc. 38; Doc. 36]

---

[13]As the seal was lifted on the majority of the docket filings on May 5, 2006, and thus the information was now in the public domain, it would, again, seem there was no compelling justification for the government to continue to withhold service.

[14]The <u>record does not reflect</u> the Notice of Intervention and Motion to Stay were served upon defendant Patel or the Patel defendants.

6/20/**07**   The United States enrolls a new attorney (Alec Alexander) to serve as "lead counsel" in the case. [Doc. 43]

7/19/07   The government files an "Unopposed Request for Temporary Lifting of the Stay, for Partial Lifting of the Seal and for Expedited Consideration," seeking to allow "the United States at its discretion to inform the defendant, Lafayette General Medical Center, Inc., of the existence of this sealed matter" at a settlement conference scheduled for July 19, 2007. (The Court notes the motion was filed the same day as the settlement conference.) Within the motion, the government notes "[t]his matter is currently stayed by order of the Court on May 5, 2006."[15] [Doc. 44-1, p.3]

7/20/07   The following day, the motion was granted. The Order states:

> (1)   The stay in this matter is lifted temporarily for the sole purpose of allowing consideration of the request for partial lifting of the seal;
>
> (2)   The seal in this matter is hereby partially lifted to allow the United States to disclose the existence of the sealed matter to defendant Lafayette General Medical Center, Inc.;
>
> (3)   This matter, and all contents of the Court's file in this action shall otherwise remain under seal and the matter will otherwise remain stayed until further order by the Court.

[Doc. 45][16]

12/14/07   The government files a Notice of Intervention and Motion to Maintain Stay, "for the purpose of giving notice that it has elected to intervene in this qui tam matter with respect to the Relator's *Amended* False Claims Act Complaint filed November 1, 2006," and "to maintain the current stay of proceedings with respect to . . . [the Patel

---

[15]The Court notes, at this point, it appears the case was stayed *only as to the Patel defendants*. [*See* Doc. 30, p.2] Additionally, the seal on the original complaint (as well as various other documents) had been lifted as of May 5, 2006, although the amended complaint remained under seal. [*Compare* Doc. 30 *with* Doc. 36] However, counsel did not request that either the original or the amended complaint be served on the Patel defendants pursuant to 31 U.S.C. § 3730(b)(2) (nor were the complaints ordered to be served by the court), nor did the government actually file (or serve) its complaint in intervention at this time, nor did the government serve its notice of intervention on the Patel defendants at this time. (None of the foregoing actions occurred until beginning in July of 2009 and continuing through January of 2010.)

[16]Again, it would appear as of May 5, 2006 and November 1, 2006, only the amended complaint of the realtor was under seal, as the stay had been lifted as to the original complaint in May of 2006 by Order of Judge Melançon. However, no service had been made on Patel and no notice granted by the government to Patel of their decision to intervene.

defendants] until conclusion of the pending criminal proceedings in Docket No. CR 06-60006."[17] [Doc. 46, pp. 1-2 (emphasis added)]

12/17/07   An Order issues granting the government's motion to stay [Doc. 46] and further ordering "an on the record status conference" to be held on January 24, 2008, with all trial counsel "who have made an appearance in this matter" being required to attend. [Doc. 47]

1/11/**08**   The government files a motion to unseal the amended complaint.[18]

1/14/08   The motion to unseal the amended complaint is granted. The Court further orders the case is to "remain **STAYED** until further order of the Court." [Doc. 49]

1/24/08   A hearing is held in open court.[19]

_____

[17]Again, the Notice of Intervention was not "accompanied by a pleading that sets out the claim or defense for which intervention is sought," as required by Fed. R. Civ. P. 24(c).

[18]In this motion, the government notes, "The Court previously unsealed the original Complaint in this matter on May 5, 2006." [Doc. 48]

[19]At the hearing, the following colloquy took place:

THE COURT:  The case that is Civil Action Number 04-00732, United States of America vs. Christopher T. -- no, excuse me, Dr. Mehmood Patel. . . . And the matter before the Court -- I do recall now when I unsealed this thing, I wanted to know -- or maybe right before. I wanted to know what was left because you had a couple of hospitals originally and they're all gone. Who's left? Who's representing whom?

I just want to know because I don't want this to stay here forever. I know we've got a criminal case coming up in August, depending on what the government does to appeal what I've already done, or what I might do in the future that they might feel they've got to appeal, or maybe the defendant will.

. . . .

[Counsel identify themselves]

**THE COURT: And do we have anybody here for the defendants?**

MR. ALEXANDER: **No, Your Honor. The matter, although it's unsealed, has not been served because it's stayed under the Court's order**. Although it's unsealed, it's not unstayed. It's  stayed pending the outcome of the criminal trial, which I believe is set for August. **So the civil matter, although unsealed, is stayed, not been served, and --**

THE COURT: Well, I tell you what I want to do. I want to change that a little

-13-

3/17/08     A "Stipulation of Dismissal with Prejudice as to Defendant Lafayette General Medical Center, Inc." is filed by the government and the relator.

**8/25/08     Jury selection begins in the criminal case.**

-----

bit. I want you to go ahead and I want you to get them served, and I will want to get the defendant to file whatever response the defendant is going to file, and -- well, let me think about that.

See, we've got the issue of the publicity in the criminal case right now, and I guess that will add yet a little more publicity. Of course, your office is fighting tooth and nail not to go up to Shreveport, and I really don't want to go up to Shreveport, I told Ms. Uebinger, for six to seven weeks.

So am I doing any good by doing that? I mean, the newspaper -- who knows. I know they do the best job they can, but every time they see his name anywhere, it just gets to be another headline down here in Lafayette, and I'm trying to protect his rights in the criminal proceeding and the government's rights, too.

. . . .

I'm concerned about the integrity of the criminal proceeding against the defendant in your civil case, and that being the case, I'd like to get this in a posture where as soon as that's over, we can tee it up. . . .

MR. ALEXANDER: . . . I would like to add quickly, if I could, that for the reasons that the government offered at the time the matter was stayed, we would urge that it would maintain its current posture pending the outcome of the civil trial -- I mean, the criminal trial. For the reasons that the Court has articulated, we believe that it makes imminently more sense to allow it to occur in that manner.

THE COURT: Breaud, what you got to say?

MR. BREAUD: Your Honor, all the defendants who are not Dr. Patel are now out of the case, so the only case left is Dr. Patel basically and his dba clinic. So I think that the normal operating procedure, when there is a concurrent civil case with a criminal, that they don't want to conduct the discovery in a civil case –

THE COURT: No, I wasn't going to allow that. What I was going to allow, though, is let him get served and file an answer. Then we'll just stay the thing at that point so it would be ready to tee up at least, but then I'm not doing anything except adding fuel to the publicity fire already if I do that, so I think Mr. Alexander's position is correct as you were trying to enunciate. I've just thought it through in my head and that's what I'll do.

[Doc. 93, pp. 1-5 (emphasis added)]

-14-

**10/1/08**       **Criminal trial begins.**

**12/30/08**     **Jury renders verdict.**

2/13/**09**       Judge Melançon issues an Order referring the civil case to the Chief Judge for reassignment.

**3/6/09**        **Case is reassigned to this Court**.

3/9/09          A telephone status conference is set with this Court on April 9, 2009 "to discuss the status of this matter." [Doc. 54]

4/6/09          The government moves to enroll two new attorneys (Katherine Vincent and Karen King) on its behalf, and to designate Ms. King as "trial counsel."[20]  The motion is automatically referred to the magistrate judge.  Former Magistrate Judge Methvin granted the motion to enroll on April 9, 2009.

4/9/09          Telephone status conference held with this Court.  At the conference, the government confirms the case is unsealed but is stayed, and the Patel defendants had not yet been served.[21]

---

[20]At a conference held on April 9, 2009, the Court was advised Alec Alexander (who had been serving as lead counsel since June of 2007) would soon be withdrawing from the case.  Thus, with that shift, the government had over the course of this litigation, changed its local, lead counsel in the civil matter four different times.  [*See* Docs. 6, 8, 43, 56, and 62]  The government additionally has replaced its Washington D.C. counsel on at least one occasion. [Doc. 98, p.25]

[21]At the conference, the Court noted it had only recently been assigned to the case (which had a five year history), and asked for a status report.  Counsel for the United States advised it had *partially intervened* to assert claims against Lourdes and Lafayette General, those claims were thereafter compromised, the only remaining claims were those against the Patel defendants, the seal over the entire case had been lifted by Judge Melançon, the Patel defendants had not been served, and the case was "still stayed to this point, pending the outcome of the criminal trial which has -- which is now complete except for the appeal. . . . [a]nd sentencing." [Doc. 98, p. 3] Counsel for the government then stated:

> So the posture is now, Judge, the United States within some reasonable period of time intends to notice its intervention in the remainder of the case, at which time it will be the relater's [sic] responsibility to serve the relater [sic] complaint, and a lawyer will appear for Dr. Patel and his corporation and the matter will be, you know, litigated.

> At some point the United States will file a complaint on intervention which will be a different lawsuit. It may or may not take all of the claims in the relater [sic]suit. The intervention  may be as to these and not as to these, but that will all be spelled out. It may bring additional ones that the relater [sic] didn't plead.

4/13/09    Relator files a motion to lift stay "for the purpose of Plaintiff being able to serve the Original and Amended False claims Complaints on [the Patel defendants]." [Doc. 57]

4/15/09    Relator's motion to lift stay to allow service is granted.

**6/4/09    Dr. Patel is sentenced in the criminal case.**

4/16/09    Summons issues to Patel defendants of Relator's original and amending complaints.

7/1/09    **Patel defendants served with Relator's original and amending complaints**.

8/7/09    A motion to enroll as counsel of record by Karl Koch is filed on behalf of the Patel defendants.

8/10/09    Motion to enroll as counsel is granted.

8/26/09    Government files a motion for a 60 day extension of time to file its Complaint in Intervention.[22]

---

[Id. at 3] Counsel for the government additionally stated the Complaint in Intervention would likely add common law claims in addition to claims pursuant to the False Claims Act.  The Court repeatedly reminded counsel that the case was very old, needed to move forward, and defendants needed an opportunity to be heard.  Counsel for Relator asked if he could move to lift the stay, so that the Patel defendants could be served and represented at the next conference.  [Id. at 20] Counsel for the government responded:

> I don't know necessarily that we would have a lot of heartburn for you to lift the stay and go forward and get -- the thing is we're going to have to get a good comprehensive complaint together which is going -- we've been working on it, but it's going to take some time. We've still got some time to put into it.

[Id. at 24] Counsel for the government ultimately advised it intended to file its Complaint in Intervention by August 31, 2009.  At the conclusion of the conference, *this Court instructed counsel for relator to file a motion to lift the stay, which would allow service of Patel, and within ten days of the filing of an Answer by the Patel defendants, counsel for relator was to coordinate a status conference with all parties and the Court.*  The Court additionally stated at the next conference, the government was to definitively advise the Court as to when it would file its intervention as to the remaining defendants.

[22]To satisfy "good cause" for the extension, the government notes that although at the previous status conference the government had "anticipated that it would be ready to file its intervention by August 31, 2009, . . . [it] also respectfully advised the Court that given the reassignment of the case the government may need additional time." [Doc. 75-1, p.2, n.2] The government then states:

> Because it is anticipated that the government's intervention in the remaining portion of the qui tam will include claims that were not part of either the criminal proceeding or the prior interventions with Lourdes and Lafayette General, the United

8/28/09    The government's motion for an extension is granted.

8/31/09    The Court withdraws it's previous order granting the government's motion for an extension to file its complaint in intervention, noting the Court had "incorrectly read the government's statement regarding defendant's opposition to the extension."[23]

9/11/09    A telephone status conference is held, with all counsel present **(including counsel for defendants)**.  At the conclusion of the conference, the Court ordered the government to file its complaint in intervention by October 31, 2009.  The Court additionally instructed counsel for defendants to coordinate a telephone conference after he filed an answer to the complaint in intervention, so that trial of this matter could be set.

10/30/09   Government files a motion for an extension of 27 days to file the Complaint in Intervention.[24]

11/2/09    Patel defendants file a motion in opposition to the government's motion for an extension.

11/13/09   A hearing is held in open court on the government's motion for an extension (as well as a motion to dismiss filed by defendants).  At the conclusion of the hearing, the Court ordered the government to file its complaint in intervention no later than 4:00 p.m. Central Standard Time, on November 23, 2009.  (Defendants' motion to dismiss was denied as premature.)

11/23/09   Government files its  Notice of Intervention and its Complaint in Intervention.

---

States respectfully requests an additional sixty (60) days, or until October 30, 2009, to file its Complaint Upon Intervention. This period will allow the newly assigned AUSA to consult with additional expert witnesses and become fully up-to-speed on all aspects of this very complex matter. It will also accommodate the government's formal intervention approval and authority process, which is part of all False Claims Act matters.

[Id. at 2-3]

[23]The Court had read the government's motion for an extension as stating defendants were unopposed to the extension; however, the motion actually reads defendants "oppose this motion." [Doc. 75-1, p.3]

[24]To satisfy the "good cause" requirement, the government stated it had "drafted a Complaint," but "[p]ursuant to federal regulation, the Assistant Attorney General for the Civil Division of the Department of Justice must approve the filing of the Complaint." [Doc. 84-1, p.1]  The government further noted it was still "awaiting approval from the Assistant Attorney General." [Id.] It requested a 27 day extension "[i]n order for the Assistant Attorney General to make the appropriate determination on the Complaint. . . ." [Id. at 1-2]

-17-

1/7/**10**        Summons is issued as to Patel defendants by the government.

1/11/10       **Summons of the government's complaint in intervention is served on Patel defendants**.

1/11/10       The motions to dismiss [Doc. Nos. 101, 102, 103, 104 and 105] and the "Motion to Unseal Any Documents..." [doc. 106] are referred to the magistrate judge for Report and Recommendation.

## Magistrate Judge's Report and Recommendation

On August 13, 2010, Magistrate Judge Patrick J. Hanna issued a Report and Recommendation, wherein he recommended:

> [D]efendants' Motion to Dismiss Government's November 23, 2009 Intervention, or Alternatively Motion to Dismiss Both the Intervention and the Complaint Filed by the United States (Rec. Doc. 101); Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 4(M) for Failure to Serve Defendants Within 120 Days (Rec. Doc. 102); Motion for Involuntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) for Failure to Prosecute (Rec. Doc. 103); and, Partial Motion to Dismiss For Failure to State Claim Upon Which Relief can be Granted, for Failure to Plead Fraud as Required by FRCP 9(b), and to Strike Certain Portions of Pleadings Filed by the Government (Rec. Doc. 104) be **DENIED**.

[Doc. 145, p.43 (emphasis in original)] He further recommended "the Motion to Dismiss Complaint Without Prejudice for Lack of Personal Jurisdiction over Defendants Due to Failure to Serve Defendants with Process Pursuant to Federal Rule of Civil Procedure 12(b)(5) (Rec. Doc. 105) be **DENIED AS MOOT**." [Id. (emphasis in original)]

## Analysis

Defendant has filed thirteen separate objections to the Report and Recommendation. Five of the objections are summarized by defendant as follows:

1.    Defendants object to the ruling by the Magistrate holding that in effect because the District Court judge had stayed this case upon the ex parte application of the government, the defendants could not base a claim for relief upon the delays in the case which occurred during the period of the stay.

2.  The Magistrate erred in failing to find that the government operated without court authority, such that it subjected itself to the available remedies for failure to timely serve the defendants and abandonment, when the government had sought and obtained a stay ending with the completion of the criminal case, yet the government waited almost four additional months once the criminal case was concluded before it sought to lift the stay.

3.  With regard to the stay as continued in effect by the District Court on January 24, 2008, the Magistrate also erred in concluding that the stay was only concurred in by the government and the Relator, when in fact the government affirmatively sought the stay by the filing of multiple motions.

4.  The Magistrate erred in holding that the fact that the Court approved of the government's delays prior to its May 5, 2006 intervention prevented defendants from attacking those delays now.

. . . .

7.  The Magistrate erred in denying Defendants' motions to dismiss based upon failure to prosecute and failure to serve the defendants timely, when that ruling was based upon the stay order issued by the District Court, which was sought and obtained by the government on an ex parte basis, when the government never demonstrated that a stay of all proceedings was either necessary or appropriate for even a limited period of time, and nevertheless the District Court issued the stay for an unlimited period. Any concern that the defendants might attempt to circumvent the narrower discovery provisions of the Federal Rules of Criminal Procedure through civil discovery could be addressed by a stay of discovery – the only type of stay that the False Claims Act authorizes.

[Doc. 148, pp. 2-3]

Defense objections 1, 2, 3, 4 and 7 essentially argue the stay ordered by Judge Melançon on May 5, 2006 was improperly granted, as the government failed to make "a proper showing of factual necessity" as required by law, and thus, the government was not entitled to rely upon the stay as a basis for withholding service of the original Complaint, or for delaying notice of the existence of the action, from defendants, for over five years.[25] [Doc. 148-1, p.10] Accordingly, defendant argues this

---

[25]Because the government intervened in this matter, "in which case the action shall be conducted by the Government," the Court, like defendants, addresses only the *government's* withholding of service and/or failure to prosecute, as opposed to any deficient conduct on the part of the relator.  31 U.S.C. 3730(b)(4)(a).

matter should be dismissed under either Fed. R. Civ. P. 4(m) for failure to effect timely service, or Fed. R. Civ. P. 41(b) for failure to prosecute.

There exists no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions against the same defendant involving the same transactions.  SEC v. First Fin. Group of Texas, Inc., 659 F.2d 660, 666-67 (5th cir. 1981)(citing United States v. Kordel, 397 U.S. 1, 11 (1970)).  Whether to stay a civil action pending resolution of a parallel criminal prosecution is thus not a matter of constitutional right, but rather, one of court discretion, which should only be exercised when the interests of justice so require. Kordel at 12, n.27; In re Beebe, 56 F.3d 1384, *2 (5th Cir. 1995)("a district court has a discretionary power to stay proceedings before it in the control of its docket and in the interests of justice, but this control is not unbounded.")[26]  "Certainly, a district court may stay a civil proceeding during the pendency of a parallel criminal proceeding." U.S. v. Little Al, 712 F.2d 133, 136 (5th Cir. 1983)(citing SEC v. First Financial Group of Texas, Inc., 659 F.2d 660, 668 (5th Cir.1981).  However, "such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" Id. (quoting First Financial Group of Texas at 668).  "'[T]he granting of a stay of civil proceedings due to pending criminal investigation is an extraordinary remedy, not to be granted lightly.'" U.S. v. Simcho, 326 Fed.Appx. 791, 792-93 (5th Cir. 2009)(quoting In re who's Who Worldwide Registry, Inc., 197 B.R. 193, 195 (Bakr.E.D.N.Y. 1996)).

---

[26]See e.g. Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir. 1979)(holding district court erred in dismissing plaintiff's libel suit with prejudice, rather than imposing a stay of discovery until the applicable criminal statute of limitations ran for a related criminal investigation and potential prosecution, after plaintiff had validly asserted his fifth amendment privilege in response to the defendant's civil discovery requests and sought a protective order staying the civil suit); SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980)(cited with approval in SEC v. First Fin. Group of Texas, 659 F.2d 660, 667 (5th Cir. 1981).

In deciding whether to grant a request to stay the civil side of parallel civil/criminal proceedings, the Fifth Circuit has provided the following guidance:

> Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. United States v. Bridges, N.D.Calif., 1949, 86 F.Supp. 931. In others it may be preferable for the civil suit to proceed- unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir.1962).   "But 'before granting a stay pending resolution of another case, the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that '**stay orders will be reversed when they are found to be immoderate or of an indefinite duration**.'"   In re Beebe at *3 (emphasis added) (noting there was nothing in the record to indicate the district court actually considered how long it would take to try the criminal case before staying the civil matter) (quoting Wedgeworth v. Fireboard Corp. 706 F.2d 541, 545 (5th Cir. 1983)).   "Thus, a stay must be 'so framed **in its inception** that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.'"   Wedgeworth at 545 (emphasis added)(quoting Landis v. North American Co., 299 U.S. 248, 257 (1936)).   Furthermore, after some (unspecified) period of time, "courts should reconsider the fairness of a stay order in light of 'present day realities.'"[27][28] Beebe at *3 (quoting

---

[27]In Beebe, after setting forth the law (a court must reconsider the fairness of the stay after a period of delay), the court stated, "the realities today almost two and one-half years after the Beebe stay was initially imposed are that in Cogan the district court still has not ruled on several dispositive motions (filed more than a year ago), much less set a trial date." Id. at *3. The Fifth Circuit ultimately granted the petition of mandamus, finding as follows:

> Returning to applicable legal parlance, we conclude that Petitioners have established that the current stay is of indefinite duration and is immoderate. **The stay is of indefinite duration** as evidenced by the passage of almost two and one-half years; and we agree with Petitioners that "the end is nowhere in sight." The stay is immoderate as the equities no longer warrant such a pervasive halt to the Beebe proceedings. In fact,

Landis at 258)).

In this matter, the government requested a stay, simultaneously with the filing of its Notice

of Intervention, on May 5, 2006.  No specific reason for the stay request was provided by the

government, other than the following: "In light of the pending parallel criminal proceeding against

Mehmood Patel, M.D., the United States seeks to stay all further proceedings in the instant qui tam

action against: . . . [the Patel defendants] until conclusion of the pending criminal proceedings in

Docket No. CR 06-60006." [Doc. 29, p.1] The same day as submission of the motion to stay (and

Notice of Intervention), the prior court signed a proposed order, submitted by the government along

with its motion, granting the stay.  Like the motion, the order contains no reasons for the imposition

of the stay, but merely states: "Upon due consideration of the notice and the papers on file in this

action, IT IS HEREBY ORDERED that, . . . all further proceedings in the instant qui tam action be

stayed against: . . . [the Patel defendants] until conclusion of the pending criminal proceedings in

Docket No. CR 06-60006." [Doc. 30, pp. 1-2]

---

at this point the continued proscription on all discovery is almost certainly having an
adverse, rather than salutary, effect on the litigation. Most troubling is the very real
potential that valuable information regarding important issues in the case may be lost
forever should this stay be maintained as to discovery. Consequently, the continued
imposition of the stay imposes the "greater and the less remediable burden" on
Petitioners. As our late lamented colleague, Judge Goldberg, once wrote:

> We must always have great respect for a trial court's judicial discretion
> in the control of its docket, but we cannot abdicate our roles in
> monitoring that discretion to prevent the ossification of rights which
> attends inordinate delay.

Beebe at *5 (quoting Hines v. D'Artois, 531 F.2d 726, 737 (5th Cir.1976)) (emphasis added).

[28]It is imperative to note that none of the jurisprudence the Court has cited with regard to the
imposition and propriety of a stay involves a situation in which the defendant is unserved, and thus
presumably unaware of even the mere existence of a civil suit pending against him. Indeed, neither the
parties, nor the Court, have been able to locate *pertinent* jurisprudence encompassing that salient fact.

Although this Court has searched for other information contained in the record to illuminate the prior court's reasons and findings in support of the imposition of the stay in this proceeding, it has been unable to locate such information in the record.[29]  The first discussion regarding the propriety of the stay that this Court has been able to locate is found in a transcript of a hearing held on January 24, 2008 - approximately two and one-half years after the initial imposition of the stay. A review of the transcript, as well as all other filings in the record, reveals the only reason found within the record, which was noted by the court for maintaining the stay, was the court's concern that any further pretrial publicity might negatively impact the ongoing criminal trial by potentially creating further pretrial publicity in the criminal matter, the facts of which had already received an inordinate amount of coverage within the press, and the concern that any additional press might necessitate a transfer of venue in the criminal matter.[30] [31]  While perhaps pretrial publicity in the

_____

[29]It appears no hearing was held on the government's motion for stay.

[30]Counsel for defendants argue "[p]reventing pretrial publicity for the purpose of preventing a change of venue in the criminal proceeding is not a valid basis for a stay order in the civil case." [Doc. 148-1, p.15] They argue the stay imposed in this matter is even "more egregious," as the government, aware that Judge Melançon was concerned about the effect any publicity could have on maintaining venue in the criminal trial, neglected to inform Judge Melançon that it was the government itself who caused the "publicity fire." [Id. at 18] Defendant argues:

> During the January 24, 2008 *ex parte* status conference, the government heard the Judge speak of his concerns about pretrial publicity, and the government then urged the court to continue the stay without mentioning to the Judge that the government had issued a press release in the civil case two weeks earlier, on January 11, 2008. The government had intentionally created part of what the Judge referred to as a "publicity fire" by seeking out attention from the media. On January 11, 2008 the government issued a press release (Attached to this Memorandum) bragging about its $1.9 million settlement with Lafayette General Medical Center; the press release is titled "LAFAYETTE GENERAL MEDICAL CENTER TO PAY $1.9 MILLION TO SETTLE FRAUD ALLEGATIONS IN CONNECTION WITH MEDICALLY UNNECESSARY CARDIOLOGY PROCEDURES". Although this release does not mention Dr. Patel by name, it referred on several occasions to a physician who had performed the subject procedures at Lafayette General. The government's press release flatly stated that this physician "was performing unnecessary procedures", that the physician made misrepresentations about medical necessity, that according to Dr. Christopher Mallavarapu (the Relator) this

criminal matter was a compelling factor in the prior court's mind to maintain the stay of this action, it cannot cure the absence within the record of the Court's reasons for the original imposition of the stay, nor can it overcome the factual argument made that the stay remained in effect after completion of the criminal trial, with no reasons found within the record, and remained a stay of indefinite duration.  While this Court is certain Judge Melançon, a prudent and well-respected jurist, did consider the applicable factors prior to imposing the stay, this Court is at a disadvantage, as none of his analysis is contained in the record, which is "the universe" from which *this* Court must operate at this juncture.

While this Court is loathe to second-guess a decision of another judge sitting in this Judicial District and Division, particularly in such a sensitive and difficult situation, one of the foundational arguments made by defendants in the motions before *this Court* key to the stay and its legal impact and effect, upon defendants in this proceeding.  Thus, this Court finds itself in the position of reviewing the record to determine the basis for the granting of the stay initially, and for sustaining the stay after the reasons cited for the initial stay had ended.   This Court has completed an exhaustive, painstaking examination of the entire record in this matter and must find the record does

---

"other cardiologist" was "routinely endangering the health and safety of patients by subjecting them to unnecessary and inappropriate medical procedures", and that the government had reviewed Dr. Mallavarapu's allegations and found them to be meritorious.

[Id. at 20-21; *see also* Id. at 16 (government additionally issued a "government press release" on January 11, 2008, announcing the settlement with Lafayette General)] Counsel concludes there, thus, was no compelling justification for failing to advise Dr. Patel of the pending civil qui tam suit by the time of the hearing held on January24, 2008.

[31]Additionally, the Court notes the only reason provided by the government at the hearing for continuing the stay was "for the reasons that the government offered at the time the matter was stayed, we would argue that it would maintain its current posture pending the outcome of the . . . criminal trial." [Doc. 93, p.5] As noted, if the government did indeed provide reasons in support of a stay at the time it filed its motion, those reasons are not contained in the record and have not been provided to this Court.

not contain sufficient reason, as mandated by the applicable jurisprudence, to justify the stay as

initially entered or to justify the continuation of the stay for an indefinite duration, continuing even

after the criminal trial had been completed.[32]   Accordingly, the Court now, turns to defendants'

argument that the stay cannot constitute "good cause" and therefore, the government cannot rely

upon the existence of the stay for its "good cause" for its failure to serve and failure to prosecute this

matter in a timely fashion.

> Rule 4(m) permits a district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 120 days of filing the complaint. Thompson v. Brown, 91 F.3d 20, 21 (5th Cir.1996). If, however, the plaintiff can establish good cause for failing to serve the defendant, the court must extend the time for service. Id. Even if the plaintiff lacks good cause, the court has discretionary power to extend the time for service. Id. A discretionary extension may be warranted, "for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed.R.Civ.P. 4(m) advisory committee's note (1993).

Millan v. USAA General Indem. Co., 546 F.3d 321, 325 (5th Cir. 2008)  "To establish good cause,

a litigant must demonstrate at least as much as would be required to show excusable neglect, as to

which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."

Systems Signs Supplies v. United States Dep't of Justice, 903 F.2d 1011, 1013 (5th

Cir.1990)(internal citations and quotations omitted).  In addition, "some showing of 'good faith on

the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within

the time specified' is normally required."  Winters v. Teledyne Movible Offshore, Inc., 776 F.2d

1304, 1306 (5th Cir. 1985)(quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and

---

[32]This Court cannot, nor does it find the stay was in and of, itself, **as a matter of law**, contrary to law, as that is a matter better suited to an appellate court.  Rather, this Court finds *only* that the record available does not contain entry of, or evidence in support of the reasons for imposition of the stay, sufficient to support the stay when looked at in hindsight and without benefit of having been present when the prior court made its decision.

Procedure § 1165 (1969)).  To determine whether good cause exists, the Court looks at the actions of the plaintiff during the applicable time period.  Id. at 1306.

As noted, the Court finds there does not exist within the record evidence of the reasons, sufficient to meet the jurisprudential requirements for a stay under these circumstances. Additionally, the factual scenario is further complicated, as the choices made by the government on how to operate within the unique confines of the *qui tam* statute, resulted in the defendants not having effective notice of any nature of the existence of the civil suit pending against them, and thus, no avenue available to them to challenge the validity of the stay if it were flawed, and no opportunity to argue its negative impact on them – particularly when chief among those negative impacts *was the resultant indefinite delay in service on the defendants*.  Nevertheless, the stay, is relied upon by the government as the basis for failure to serve the Patel defendants, and the failure to serve deprived the defendants of their opportunity to challenge the stay – the proverbial "Catch 22."

The Patel defendants, having been divested of sufficient and timely notice of the suit, were thus, divested of any opportunity to challenge the validity of the stay.  The mere fact the stay was issued does not in and of itself validate the stay as a matter of law.  The stay has now been lifted by this Court, thus the likely procedural vehicle of mandamus is no longer available.  However, to the extent the government wishes to rely upon the existence of the stay as its justification for failing to serve the Patel defendants for over five years, the underlying efficacy of the stay is placed squarely at issue and defendant must at this point be free to make his challenge.  Under the circumstances now existing, particularly noting the absence within the record of the prior court's full reasoning for issuing the stay or sufficient contemporaneous argument by the government for the requested motion for a stay, both  initially, and continuing after the criminal trial completion, this Court must find the

government cannot rely upon the stay as "good cause" for its failure to serve defendants with the complaint in the qui tam suit.  However, this does not end the inquiry as, "even if the plaintiff lacks good cause, the court has discretionary power to extend the time for service."  Id.  Where the applicable statute of limitations likely bars future litigation, a district court's dismissal of claims under either Rule 4(m) (failure to serve) or Rule 41(b) (failure to prosecute) is reviewed under the same heightened pleading standard.  See e.g. Millan at 326; Sealed Appellant v. Sealed Appellee, 452 F.3d 415, 417 (5th Cir. 2006); Boazman v. Econ. Lab., Inc., 537 F.2d 210, 213 (5th cir. 1976). In this matter, although defendants seem to suggest the statute of limitations has run on some, if not all, claims asserted, they have made it exceedingly clear they do not wish to argue a limitations defense at this time.[33]  Nevertheless, defendants' requested remedy is dismissal *with prejudice*, more

---

[33]  Defendants' thirteenth objection to the Report and Recommendation states, in its entirety, as follows:

> **13.     The Magistrate Judge erred in the statement contained in his ruling at page 35, which stated: "The defendants contend the statute of limitations has run on the claims, so in effect, any dismissal will be with prejudice." Defendants did not assert any motion based upon the statute of limitations, and in fact specifically reserved doing so until such time as discovery has been had relevant to the issue of the relation back of the government's claims filed in 2009 to the relator's petition filed in 2004 under the circumstances presented here. Defendants wish to avoid any suggestion that they have asserted a statute of limitations defense at this time.**

In fact, defendant's motion and memorandum (Document 103) made it  clear that the defendants were not presenting a limitations defense at this time:

> When defendants submit their limitations defense at the proper time in this matter, the issue of whether the government's complaint relates back for limitations purposes to the bare-bones document filed by the Relator (which does not specify a single false claim, or a single date upon which a false claim was made, or even a range of dates, or a dollar amount for any false claim or for all of them) will provide the courts with the opportunity to explore a case on the far extremes of what has been reported thus far in False Claims Act cases.

often the remedy argued when the statute of limitations has run.[34] [*See e.g.* Doc. 102-1, pp. 20-22]

The Fifth Circuit has "repeatedly recognized . . . a dismissal with prejudice for failure to prosecute is an extreme sanction which is to be used only when the 'plaintiff's conduct has threatened the integrity of the judicial process [in a way which] leav[es] the court no choice but to deny that plaintiff its benefits.'" McNeal v. Papasan, 842 F.2d 787, 790 (5th Cir.1988)(quoting Rogers v. Kroger Co., 669 F.2d 317, 321 (5th Cir.1982)); *see also* Millan at 326 (recognizing dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim"). Consequently, a district courts' discretion to dismiss claims with prejudice is more limited than its discretion to dismiss claims without prejudice. Millan at 326. Dismissals with prejudice pursuant to Rules 4(m) and 41(b) will be affirmed only upon: (1) a clear record of delay or contumacious conduct by the plaintiff, and (2) where lesser sanctions would not better serve the interests of justice. Millan at 326; Sealed Appellant at 417. Additionally, courts generally require a finding of one of the following three "aggravating factors" before entering a dismissal with prejudice: (1) delay caused

---

Document 103 at pp. 23 - 24. Defendants did not assert a limitations defense in this set of motions, and to the extent that the Magistrate's ruling appears to indicate to the contrary, it is incorrect.

[Doc. 148-1, p. 25(emphasis in original); *but see* Doc. 102-1, p. 20 ("and in any event defendants show that the statute of limitations has expired in the interim since the filing of Relator's Original Complaint. . . .")*; see also* Doc. 103, pp. 25-27; Doc. 102-1, p. 12, n.3]

[34]Defendants address dismissal without prejudice in only two sentences found at p. 22 of their memorandum in support of their motion to dismiss pursuant to Rule 4(m), when they state:

Even if the dismissal is without prejudice, it should be entered in this case, with the effect of that dismissal to be determined upon refiling of the case should that occur. The fact that service was eventually made is no bar to the granting of a motion to dismiss pursuant to Rule (m) if that service was outside the time limit. Geiger v. Allen, 850 F.2d 330 (7th Cir. 1988).

[Doc. 102-1, p.22]

by plaintiff himself, rather than his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.  Millan at 326; Sealed Appellant at 418 ("aggravating factors must usually be found; we have not said they must 'always' be found").

In this matter, the Court finds the first requirement for dismissal with prejudice is satisfied - *i.e.* there is "a clear record of delay" in this case: more than five years passed between the filing of the suit and service, and more than two years passed between the time Dr. Patel became aware of the criminal Indictment and service of this qui tam suit, and more than seven months passed between Dr. Patel's criminal sentencing hearing and service is in this matter.[35]  However, the Court finds lesser sanctions than dismissal with prejudice will better serve the interest of justice, and thus, the second required factor for dismissal with prejudice is not present in this matter.[36]  Defendants

---

[35]It can be argued service of the qui tam action should have occurred (at the latest) at the time of service of the summons in the criminal matter, which, it is argued, could have resulted in a stay of discovery in the qui tam suit and thus removed any risk to the government as, at that time, Dr. Patel necessarily had become aware of the government's criminal case against him, and thus, there was no longer a danger of "tipping him off" to the criminal investigation.

[36]The Court is cognizant of the Fifth Circuit's discussion in Sealed Appellant (cited by defendants), which analyzes the second factor, and states as follows:

As we explained in Veazey,

> A delay between filing and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process.

> In this type situation, "a lesser sanction would not better serve the interests of justice." Brown v. Thompson, 430 F.2d 1214, 1216 (5th Cir.1970).

Veazey, 644 F.2d at 478.

We note that although later cases discuss the second requisite factor in terms of whether a district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or whether the record shows that the district court employed lesser sanctions that proved to be futile, see Berry, 975 F.2d at 1191, Rogers and Veazey predate these cases and employ the standard we used above, which is derived from an

primarily set forth two arguments in support of dismissal with prejudice: (1) the government violated the plain language of the false claims statute by engineering various delays in service and prosecution; and (2) the delays in service and prosecution have caused prejudice to defendants.  As to defendants' first argument, they have provided no persuasive or binding authority that dismissal with prejudice would be the proper remedy for the violations they allege, even if found by this Court.[37]  As to their second argument, the Court finds lesser sanctions than dismissal with prejudice will better serve the interest of justice.

---

even earlier case, Brown v. Thompson, 430 F.2d 1214, 1216 (5th Cir.1970). We decline to decide whether Berry is in tension with Rogers, so the standard discussed in Rogers is the correct one under the prior panel rule.

We do conclude that in cases such as this one, **where the limitations period expired during the delay**, later panels such as Berry or Tello could not have overruled Veazey and Porter, which found that there was no abuse of discretion in dismissing a case for failure to prosecute, even if the district court judge did not previously employ a lesser sanction or expressly determined that lesser sanctions would not prompt diligent prosecution. There is no need for the district court expressly to determine that lesser sanctions would not prompt diligent prosecution when this court has determined that it is precisely such prosecution that the statute of limitations is meant to stop. **If the statute has run**, a potential defendant that has not been served is entitled to expect that it will no longer have to defend the claim.

Although Veazey stated that "[w]e are not unmindful of the need to be cognizant of the innocent plaintiff who may be harmed by the inaction of counsel," 644 F.2d at 479, Veazey itself affirmed the dismissal with prejudice, even if the plaintiff in that case was innocent and the inaction was that of counsel. Therefore, the court did "weigh" the fact that the plaintiff was not involved in the delay, but nonetheless found that the prejudice to the defendant from the limitations lapse was so severe that it warranted dismissal. Id. (emphasis added)

Sealed Appellant at 419-20 (footnotes omitted, emphasis added).  Nevertheless, as previously noted, defendants have explicitly declined to address a limitations defense in this motion, and for that reason, this Court finds Sealed Appellant is not as persuasive as defendants contend. [Doc. 148-1, p. 25; see also note 33, supra]

[37]Moreover, defendants employ a somewhat suspect analysis of the statute, and have provided no persuasive authority in support of the legal arguments they make.  Thus, the Court finds their legal argument unpersuasive.

Defendants argue they were prejudiced as follows: (1) "loss of important evidence during the period of delay, including the loss of Dr. Patel's patient records due to Dr. Patel's compliance with an order requiring him to distribute those records to his patients or their new doctors that was entered following his conviction on December 30, 2008"[38]; (2) "this civil case has been used as the basis for the withholding of funds owed to defendants, although lacking knowledge of the existence of this case Dr. Patel did not know that this was a reason for the withholding" [Doc. 102-1, p.21; Doc. 103-1, p.23]; (3) "defendants are informed and believe that during the period of delay, witnesses who could have provided relevant testimony regarding the government's claims have become unavailable, and it is likely that other witnesses who are still available have forgotten crucial facts due to the passage of time" [Doc. 103-1, p. 24]; and (4) "although some courts have reached a different result, the government may be able to obtain prejudgment interest as to its common-law claims for unjust enrichment and payment by mistake." [Id. at 24]

As to defendants **first** argument ("loss of important evidence during the period of delay"), defendants argue as follows:

1)      **The Judge presiding over Dr. Patel's criminal case ordered him to return all of his patient records to his former patients or to deliver those records to his patients' new doctors as a condition of Dr. Patel's bond following conviction; not knowing that this case existed, Dr. Patel had no reason to keep copies of those records.** . . . Dr. Patel's criminal trial concluded on December 30, 2008 when the jury returned its verdict, which found Dr. Patel not guilty of 40 of the counts against him and guilty of the remainder of the 91 counts alleged. The court modified Dr. Patel's bond conditions to include an order that he immediately stop seeing patients and within 14 days remove all of his patients' medical records from his office by either sending the records to the patients themselves or sending the records to a new doctor for the patients. These facts are set forth in the Declaration of

---

[38]Defendants further note because Dr. Patel did not know this case existed, "Dr. Patel had no reason to keep copies of those records," and further argue, "the government knew that this order would result in the loss of evidence necessary for the defense of this civil case, yet the prosecutors (including the United States Attorney for this District) said nothing when the order was entered." [Doc. 102-1, p.21; Doc. 103-1, p.22]

Karl J. Koch, filed contemporaneously with this Motion. Dr. Patel did not know that he was a defendant in this case at the time. Government counsel, on the other hand, knew that Dr. Patel was a defendant in this case and must have known that giving up his patients' records would cause prejudice to Dr. Patel in the defense of this case – the government attorneys had seen Dr. Patel's counsel use his patients' records in defending the criminal case, and they knew that the records were important for Dr. Patel's defense. Despite knowing that Dr. Patel's loss of his patients' records would make it harder for him to defend this case, counsel for the government (including the U.S. Attorney) stood silent.

Had Dr. Patel known of the existence of this case, he would have made arrangements to keep a copy of the patient records. Instead, he complied with the Court's order and relinquished all of the records, without making a copy. The full extent of the prejudice is not yet known – some of the records will likely not be able to be recovered, may have been altered or have had portions removed. The prejudice to Dr. Patel was entirely preventable – the government could have informed Dr. Patel about this case without the slightest risk of harm to the criminal matter, which had concluded. The government is entirely responsible for Dr. Patel's loss of the use of his patients' records, which resulted from the government's unreasonable delay in the prosecution of this case.

[Doc. 103-1, pp. 22-23(emphasis in original)] No citation to the alleged order entered in the criminal record has been provided. The Court has made a painstaking search through the voluminous record in the criminal matter and has been unable to locate any such order.[39] While defense counsel's affidavit, attached to the underlying motion, repeats this allegation, counsel states he is unable to cite the Court to that Order, because it is only contained in a "rough transcript," and counsel is prohibited from citing the Court to a "rough transcript." This Court cannot continue to expend its limited, judicial resources attempting to locate information in a voluminous record, particularly when defense counsel has had ample time and opportunity to obtain an official transcript and supplement his motion with same. Should counsel's allegation prove correct, an appropriate sanction will be

---

[39]The only order similar to that purported by defense counsel that this Court has been able to locate within the record is found within the judgment of conviction, which states, "The defendant shall immediately surrender his medical license and shall not practice in the State of Louisiana, Canada, or India." [Doc. 262, p.2] The document is silent as to any requirement that defendant turn over his patient files to either the patients or their new doctor.

fashioned.[40]

As to defendants' **second** argument (this civil case has been used as the basis for the withholding of funds owed to defendants, although lacking knowledge of the existence of this case Dr. Patel did not know that this was a reason for the withholding), defendants have provided no authority to support this allegation nor have they provided a legal basis for a dismissal of this action based upon the withholding of funds, simply because a defendant was unaware of the reason for the withholding.[41]

Defendants' **third** argument is as follows:

> **Defendants are informed and believe that during the period of delay, witnesses who could have provided relevant testimony regarding the government's claims have become unavailable, and it is likely that other witnesses who are still available have forgotten crucial facts due to the passage of time.** See the Declaration of Karl J. Koch, which identifies 12 of the patients for whom allegedly false claims were made who have passed away – 1/5 of the total number of patients set forth in the New Complaint. Given the age of Dr. Patel's patient population, it is likely that many of the patients upon whom the allegedly "unnecessary" procedures were performed have passed away. Defendants are attempting to determine whether any of the patients identified in the New Complaint have died. As to the patients who are still living, common sense tells us they are less likely to recall facts now regarding their condition at the relevant time than they would have been years ago when Dr. Patel should have been informed about this case.

[Doc. 103-1, p.24(emphasis in original)] For those patients defendants show: (1) are deceased, *and*

(2) insufficient testimony was developed during the criminal trial, *and that the deceased witnesses*

---

[40]For example, if counsel's assertions are correct, upon review of the transcript containing the order, the Court will fashion an appropriate sanction should same be warranted - *e.g.* ordering the government to produce any such files in its possession, at its expense and without the necessity of a formal request from plaintiffs; prohibiting the government from pursuing any claims in this matter for which the patient file information (if shown to likely be relevant to the defense in this matter) is unavailable, etc.

[41]While perhaps an applicable regulatory statute might provide a remedy to defendants for any purported withholding of funds, defendants have failed to cite any such authority and have failed to carry their burden of proof as to any purported (but unsupported) withholding of funds and thus, fail to persuade or establish they are due the remedy they seek.

*are sufficiently relevant to the defense of the qui tam suit,* the Court will deny any claim within the qui tam **involving those particular patients and procedures**.   Additionally, the government is ORDERED to provide defense counsel, at the government's expense and without the necessity of a formal request, any non-privileged, non-work product evidence it has, either in its possession or available to it in both its civil and criminal divisions, which pertains to any witness upon which the government's civil claims are  based.[42]

As to defendants' **fourth** argument (prejudgment interest for common-law claims), the Court will favorably view any request by defendant to deny the government prejudgment interest, given the lengthy delay in serving defendants and prosecuting this action, should prejudgment interest become an issue before the Court.

In objection number **five**, counsel further argues prejudice as follows:

> [D]efendants show that an additional area in which they suffered prejudice is related to the fact that during the time that Dr. Patel and his companies were defendants, but they didn't know they were defendants, the government reached settlements with two separate co-defendants. As a result, by the time that Dr. Patel learned that he was a defendant in this matter, neither of the hospital defendants were parties to the case any longer.
>
> As the Court is aware, the discovery options available to a party are greatest when seeking discovery from another party. Had Dr. Patel been told that he was a defendant, and had he been allowed to conduct some limited discovery, he could have issues [sic] interrogatories, requests for production of documents, and requests

---

[42] The government is hereby ADVISED the scope of this Order is to be given it's broadest, permissible interpretation.  For example, by use of the term "evidence," this Court does not mean that evidence which would be admissible at trial, but rather all evidence which is subject to discovery - *i.e.* all relevant evidence, as well as all information in the government's possession, civil or criminal division, locally or within Washington D.C., or readily available to it, which "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Furthermore, the Court is likely to favorably view a request that the government produce any "work product" pertaining to these witnesses, after production of any privilege/work product log, should defendant be able to "show[] substantial need for the materials to prepare its case and [that they] cannot, without undue hardship, obtain their substantial equivalent by other means" Fed. R. Civ. P. (b)(3)(A).

for admissions to the hospital defendants before the [sic] "left the building." Now, since neither of these entities is still a party (or so defendant's counsel has been told) Dr. Patel cannot use any of these discovery methods. While small, this type of prejudice is very significant, particularly when comparing the costs associated with conducting a records deposition with a subpoena duces tecum as compared with obtaining records through a request for production of documents. Now, Dr. Patel cannot use the cheaper, easier discovery methods reserved for parties as to the hospitals.

[Doc. 148-1, pp. 9-10]

In light of the foregoing argument, the Court hereby ORDERS counsel for the government to produce and provide to defendants, at the government's cost and without the necessity of a formal request, all non-privileged, non-work product evidence it has, either in its possession or available to it, which pertains to either Lafayette General or Our Lady of Lourdes and is in any way relevant to, or likely to lead to relevant information as to this qui tam action.[43]

Defendants' **sixth** objection states as follows:

> **6.    The Magistrate erred in denying Defendants' motions to dismiss based upon failure to prosecute and failure to serve the defendants timely, when that ruling was based upon the District Court's entry of a stay of all proceedings as to these defendants only, when the stay (which was sought and obtained ex parte) was an abuse of the District Court's discretion and was improper under the provisions of the False Claims Act; the concerns which were given as the reasons for the stay could have been addressed by a stay of discovery only rather than a stay of all proceedings.**

[Doc. 148-1, p.13 (emphasis in original)] The Court finds this to be defendants' strongest argument. Due to the manner in which the government proceeded in this matter (*i.e.* by withholding service for over five years), and thus, denying defendant notice of any kind, defendant was not only prevented from challenging the stay, which the government relied upon to foreclose service, but also was prevented from utilizing the customary vehicle by which one could obtain relief if one believes a

---

[43]The government is to interpret this Order in the same broad fashion explained at note 42 *supra*.

Court has erred - namely, an application for a writ of mandamus - as defendant was wholly unaware of the existence of this qui tam action, and therefore unaware of the (now challenged) stay and failure to timely serve defendant. Moreover, because the record does not reflect the Court's reasons and basis for the stay (other than the reference to the pendency of the criminal proceeding contained in the government's motion, which, as discussed, is likely insufficient by itself for imposition of a stay), we cannot know if there application for a writ would have been successful. However, we will never know, as defendants could not challenge the stay that the government was relying upon to delay service, precisely because the government was delaying service. Notwithstanding, however, defendant has failed to carry his burden of proof to show he is entitled **to the specific relief requested**, dismissal **with prejudice**, under the existing jurisprudence, and basis argued, and the prejudice argued has been or can be ameliorated or removed. Thus, dismissal with prejudice is again, not supported.

As to defendants' **eighth, ninth, tenth and eleventh** objections [Doc . 148-1, pp. 2, 22, 23], the Court finds, after review of defendants' motion, the Magistrate Judge's Report and Recommendation, and the objections thereto, that the Magistrate Judge is correct, and further discussion is unwarranted.

Defendants' **twelfth** objection is as follows:

> **The Magistrate Judge erred in failing to rule upon certain of the motions and requests for relief made by the defendants in Document No. 104, Partial Motion to Dismiss for Failure to State Claim Upon Which Relief Can Be Granted, for Failure to Plead Fraud as Required by Federal Rule of Criminal Procedure 9(b), and to Strike Certain Portions of Pleadings Filed by the Government. Defendants re-urge each of the grounds for relief as set forth in their motion which were not addressed by the Magistrate Judge.**

[Doc. 148-1, p.20(emphasis in original)] Specifically, defendants argue the Magistrate Judge's Report and Recommendation did not address paragraphs 1, 5, 6, and 7 of Defendant's Partial Motion to Dismiss (Doc. 104). As to paragraph 1, the Court DENIES the motion and hereby adopts the government's argument in opposition as it reasons for this Ruling. [*See* Doc. 120, pp. 16-20; *and* Doc. 150, pp. 9-14] As to paragraph 5, the Court finds it was adequately addressed in the Magistrate Judge's Report and Recommendation, and will not be further addressed herein. As to paragraphs 6 and 7, the Court finds the objections are without merit for the reasons provided by the government at pp. 20-23 and 28-29 in its opposition memorandum, and the Court ADOPTS these reasons as its own.

> Defendant's **thirteenth** objection states:
>
> The Magistrate Judge erred in the statement contained in his ruling at page 35, which stated: "The defendants contend the statute of limitations has run on the claims, so in effect, any dismissal will be with prejudice." Defendants did not assert any motion based upon the statute of limitations, and in fact specifically reserved doing so until such time as discovery has been had relevant to the issue of the relation back of the government's claims filed in 2009 to the relator's petition filed in 2004 under the circumstances presented here. Defendants wish to avoid any suggestion that they have asserted a statute of limitations defense at this time.

[Doc. 148-1, p.25] The Magistrate Judge's statement was not a ruling, rather it was a comment noting defendant's passing reference suggesting the statute of limitations was suggested to have run on all or part of the government's claims, and his recognition of the applicable standard if that is indeed the case. To the extent defendants have carved out the argument that the statute of limitations has run, this Court has recognized that fact, and thus, this Court finds this "objection" has no merit; defendants' displeasure with the magistrate's statement is noted.

For the reasons stated in the Report and Recommendation, as supplemented and modified herein, IT IS ORDERED, ADJUDGED AND DECREED that defendants' motions [Docs. 101, 102, 103, 104, and 105] are DENIED.

Lafayette, Louisiana, this ___*30*___ day of September, 2010.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE