UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA            CIVIL ACTION NO. 4-cv-732
EX REL. CHRISTOPHER T.
MALLAVARAPU

VERSUS                              JUDGE FOOTE

ACADIANA CARDIOLOGY, LLC.;          MAGISTRATE JUDGE HANNA
ACADIANA CARDIOVASCULAR
CENTER, LLC.; MEHMOOD PATEL, M.D.
ET AL

_____*Memorandum Ruling*

Before the undersigned, on referral from the district court for ruling, is

Defendants' Motion to Compel Regarding September 30, 2010 Order. [Rec. Doc.

178]  The motion is opposed by the government. [Rec. Doc. 182] The movers filed

a reply memorandum as well. [Rec. Doc. 183] The undersigned heard oral

argument on the motion on January 13, 2012.  For the reasons set out below, the

motion is granted in part, denied in part and denied in part as moot.

*Pertinent Factual and Procedural Background[1]:*

The instant motion arises out of the *qui  tam* action filed on March 25, 2004

by Christopher T. Mallavarapu, on behalf of the United States, under provisions of

_____

[1]The history provided in this section has been condensed for use relative to the
pending motion only.  For a more detailed chronology of the factual/procedural history of
this matter and the related criminal matter, see the recitations set out in the Report and
Recommendation at Rec. Doc. 145 and the district court's Judgment at Rec. Doc. 151.

the False Claims Act, 31 U.S.C. §3730, et seq.  The relator alleged that during his

employment by Acadiana Cardiology, LLC as a physician, he became aware the

defendants were performing unnecessary, improper, and excessive medical

services, for which they were billing federally funded health care programs. [Rec.

Doc. 1] The complaint was accompanied by a motion to seal the record pursuant to

the statutory requirements of 31 U.S.C. §3730(b)(2), which motion was granted.

As required by the statute, the Attorney General and United States Attorney were

served with the complaint.  The government filed several motions for extensions of

time to allow it to decide whether to intervene in the action, seeking extensions of

the seal period as well.  Dr. Mehmood Patel was indicted by the Grand Jury on

February 15, 2006, and a summons was issued and returned executed by late

March, 2006.  During this time period the record of the instant matter remained

sealed.  By May 5, 2006, the government filed a combined Notice of Intervention

and Motion to Stay, seeking to stay all further proceedings in the *qui  tam* action in

light of the pending parallel criminal proceeding against Patel and until conclusion

of those proceedings. [Rec. Doc. 29]

By the summer of 2007, the government sought a temporary lifting of the

stay and partial lifting of the seal in order to facilitate settlement with one of the

hospital defendants. The request was granted, and the district court's Order

indicated that the contents of the court's file would otherwise remain under seal and the matter would otherwise remain stayed until further order by the court. [Rec. Doc. 45]  While the record of the amended complaint was unsealed at the government's request in January, 2008, the same Order confirmed that the case against the Patel defendants would remain stayed. [Rec. Doc. 49]

On December 30, 2008, Patel was convicted of multiple criminal counts; he was sentenced on June 4, 2009.  His conviction and sentence are presently on appeal. In the interim between Patel's conviction and sentencing, the instant case was re-assigned to Judge Rebecca Doherty.  In a telephone status conference held on April 9, 2009, the government confirmed that the Patel defendants had not yet been served. [Rec. Doc. 98, p. 3] In response to the relator's motion, an order lifting the stay was issued on April 15, 2009, and the Patel defendants were served with the complaints on July 1, 2009.  Also in response to motions, the district court gave the government a deadline of October 31, 2009 for the filing of its intervention in the case.  The government sought another extension of time, which was opposed by the Patel defendants, and the district court ordered the government to file its intervention by November 23, 2009.  The government complied. Multiple motions by the Patel defendants followed, which motions were the subject of a Report and Recommendation by the undersigned on August 16, 2010. [Rec.

-3-

Doc. 145]  Defendants filed multiple objections and on September 30, 2010, a

Judgment was entered adopting the Report and Recommendation and additionally

supplementing/modifying the ruling. [Rec. Doc. 151] The parties' interpretations of

the  Orders contained in the Judgment are at the core of the motion now before the

undersigned.

In the Judgment, the United States was ORDERED by Judge Doherty

> *to provide defense counsel, at the government's expense and without the necessity of a formal request, any non-privileged, non-work product evidence it has, either in its possession or available to it in both its civil and criminal divisions, which pertains to any witness upon which the government's civil claims are based. [Rec. Doc. 151, p. 34]*
>
> ***
>
> *to produce and provide to defendants, at the government's cost and without the necessity of a formal request, all non-privileged, non-work product evidence it has, either in its possession or available to it, which pertains to either Lafayette General or Our Lady of Lourdes and is in any way relevant to, or likely to lead to relevant information as to this qui tam action. [Rec. Doc. 151, p. 35]*

As to each of the referenced Orders,  Judge Doherty gave instructions for

their interpretation:

> *The government is hereby ADVISED the scope of this Order is to be given it's broadest, permissible interpretation.  For example, by use of the term "evidence," this Court does not mean that evidence which would be admissible at trial, but rather all evidence which is subject to discovery–i.e. all relevant evidence, as well as all information in the government's possession, civil or criminal*

> ***division, locally or within Washington, D.C., or readily available to
> it, which "appears reasonably calculated to lead to the discovery of
> admissible evidence." Fed.R.Civ.P.26(b)(1).  Furthermore, the Court
> is likely to favorably view a request that the government produce any
> "work product" pertaining to these witnesses, after production of
> any privilege/work product log, should defendant be able to "show
> []substantial need for the materials to prepare its case and [that
> they] cannot, without undue hardship, obtain their substantial
> equivalent by other means.  Fed. R. Civ. P. (b)(3)(A). [Rec. Doc. 151,
> pp. 34-35, n. 42-43]***

On January 27, 2011, the case was transferred to Judge Elizabeth E. Foote.
On May 19, 2011, the government filed a Motion to Vacate Judge Doherty's
September 30, 2010 Order, asserting that the Order was based upon false
representations made by the defendants. [Rec. Doc. 163] The motion was opposed
by the defendants.  On June 24, 2011, the Motion to Vacate was denied. [Rec. Doc.
176] The court found that the Judgment of September 30, 2010, while not a
sanction, " was instituted in an effort move the case toward trial." [Rec. Doc. 176,
p. 2]

By late July, 2011, the government was representing that it had fully
complied with the court's orders; the defendants disagreed, and on the prior
instruction from the district court, this Motion to Compel was filed. [Rec. Doc.
176, 178]  On November 15, 2011, the parties participated in a status conference
with the district judge at which time the parties were instructed to meet and confer

on the motion issues by January 2, 2012. [Rec. Doc. 186]  The district court ordered that if the parties were unable to resolve their differences by January 4, the motion would be referred to the undersigned for ruling.

### Specific Categories of Discovery at Issue:

Defendants challenge the adequacy of the government's production in the following categories:

1. Information pertaining to the Relator, Dr. Mallavarapu and any information which he provided to the government specifying any false claim, date or procedure/patient.

2.  Any information or evidence disclosed by Dr. Mallavarapu pursuant to the False Claims Act as to Lafayette General Medical Center.

3. Information received from Cooperating Individual #1, referenced in the Alleman affidavit.

4. The information received from Cooperating Individual #2 referenced in the Alleman affidavit.

5. The information received from Cooperating Individual #3 referenced in Alleman affidavit.

6. Everything described in the Alleman affidavit pertaining to Dr. Mallavarapu, including information referenced at Paragraph 9.

7. Information regarding the internal peer review investigation by Lourdes Hospital referenced in the Alleman affidavit at Paragraph 11.

8. All correspondence between CMS and the government in the criminal case and/or otherwise pertaining to statistical sampling to be used by the government as proof.

9. Information related to the retrieval of documents from Dr. Patel's office by nurse Neil Kinn at the request of the government in the criminal matter.

10. Information regarding a Mr. Huggins with Our Lady of Lourdes and his contact with CMS and/or OIG before Mallavarapu made his disclosure.  Production of the "multiple productions of records" made by Lourdes to the U.S. Attorney.

11. Any/all documents produced by Lourdes in response to subpoenas of 1/27, 3/19, and 6/24/04.

12. The settlement documentation from the settlement with Lafayette General Medical Center.

13. Information and documentation regarding the numerous civil actions filed in Louisiana state courts regarding matters addressed in this case, including documents, depositions, or other materials.

14. Information/materials from government-retained expert witnesses in the criminal prosecution, including expert reports.

15. Missing files/documents(Folders 9, 14, 16) from productions previously made relative to two hospitals.  Defendants call for disclosure of information about the omitted documents.

16. All FBI 302s, or other records of interviews of all witnesses in this matter.

In response to Defendants' call for production of documents in the categories

referenced above, the government has responded generally that (a) the requested

information does not exist; (b) the requested information has been produced; (c)

the requested information was already produced in the criminal litigation; (d) the

requested documents should already be in the defendants' possession from the

criminal case or other civil litigation, and (e) the requested documents are subject

to the attorney/client or work product privileges.

### *Applicable Law and Discussion*

_____In the context presented, the undersigned does not consider this motion as the typical discovery motion--it is not.  The motion is considered, rather, as a motion to compel compliance with the orders of the court as they were set out in the Judgment cited above.  Thus, the government's assertions of its reasons for non-production/non-compliance with the district court's order will be considered as instructed by the district court, that is by giving the Order its 'broadest' permissible interpretation and 'favorably viewing' a request for production of government work product pertaining to the witnesses upon which the government's claims are to be based, if the defendant is able to show substantial need for the materials to prepare his/its case and that the defendant cannot, without undue hardship, obtain their substantial equivalent by other means. [Rec. Doc. 151, pp. 34-35, n. 42-43]

_____The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified in Fed. R. Civ. P. 26(b)(3), protects documents and other tangible things prepared in anticipation of litigation by or for a party, or by or for a party's representative.  The work product doctrine protects the integrity of the adversarial process by creating a zone of privacy and protection for the attorney's preparatory work on a case.  *Id.*, 329 U.S. at 510-11.

_____Rule 26(b)(3) provides that parties to litigation may obtain discovery of materials and documents prepared in anticipation of litigation only upon a showing that the party seeking discovery has a "substantial need" for the material in preparation of the party's case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means.  Fed. R. Civ. P. 26(b)(3); *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983).

The qualified work product immunity does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation."  *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997); *Hill Tower, Inc. v. Dept. of Navy*, 718 F.Supp. 562, 565 (N.D. Tex. 1988). In *United States v. Davis*, the Fifth Circuit set forth the standard in this circuit for determining whether a document has been prepared in anticipation of litigation as opposed to being prepared in the normal course of business:

> _____It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine.  *See Kent Corp. V. NLRB*, 5 Cir. 1976, 530 F.2d 612, 623, *cert. denied*, 1976, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287; *In re Grand Jury Investigation (United States)*, 3 Cir. 1979, 599 F.2d 1224, 1229.  We conclude that litigation need not necessarily be imminent, as some courts have suggested, *see, e.g., Home Insurance Co. v. Ballenger Corp.*, N.D.Ga. 1977, 74 F.R.D. 93, 101; *In re Grand Jury*

> *Investigation (Joseph B. Sturgis)*, E.D.Pa. 1976, 412 F.Supp. 943, 948,
> as long as the primary motivating purpose behind the creation of the
> document was to aid in possible future litigation.  *See, Osterneck v.
> E.T. Barwick Industries, Inc.,* N.D.Ga. 1979, 82 F.R.D. 81, 87, citing 8
> C. Wright & A. Miller, Federal Practice and Procedure sec. 2024, at
> 198 (1970).

*United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981).

Against this backdrop and the district court's Judgment, the undersigned will

address each category cited by the defendants in the motion:

1. Information pertaining to the Relator, Dr. Mallavarapu, and any information

which he provided to the government specifying any false claim, date or

procedure/patient. This dispute was resolved by the parties, and the motion is

DENIED AS MOOT as to this request.

2.  Any information or evidence disclosed by Dr. Mallavarapu pursuant to the

False Claims Act as to Lafayette General Medical Center. This dispute was resolved

by the parties, and the motion is DENIED AS MOOT as to this request.

3. Information received from Cooperating Individual #1, referenced in the

Alleman affidavit.

The government asserts this information was turned over to Dr.  Patel in the

criminal case, filed into the record of the criminal case, and available on PACER. Defendant makes the argument that its defense counsel in the instant case was not involved in the criminal matter, does not have access to the files kept by the criminal defense attorneys, and has no knowledge whether those files were maintained such that everything the government produced is still in the attorney's possession.  They assert that it presents an unfair burden to allow the government to simply refer to the criminal case production as adequate under the  specific order of the court.

In addition, FRCP 26(b)(1) provides that a party must provide information and documents it possesses, regardless of who else possesses that information. Thus, it generally is not proper to object on the basis that the party already has the information it is requesting or that information is in the public record or is otherwise available to the party.

The undersigned finds this response does not comply with Judge Doherty's Order and the government will make this information available to the defendants for review. If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense. To this extent, and this extent only, the motion is GRANTED as to this request.

4. The information received from Cooperating Individual #2 referenced in the

Alleman affidavit.

The government represents that this individual is a confidential informant who is not a witness in this case. There were no documents produced by the informant, and the only documents in existence would be notes prepared by agents of the FBI and OIG  from interviews they conducted with the informant.  The government argues, given existing jurisprudence, when compared with Judge Doherty's Order, this information is privileged and need not be produced as it does not fall within the ambit of the Order.

"What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Brock v. OnShore Quality Control Specialists, Inc.*, 811 F.2d 282, 283(5th Cir. 1987)(*citing Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639(1957). "The government may invoke this privilege 'as a right' and 'need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege.'" *In re Kleberg County, Tex*., 86 Fed. Appx. 29, 32(5th Cir. 2004)(quoting *United States v. Valles*, 41 F.3d 355, 358(7th Cir. 1994).  While the privilege most often arises in criminal cases, it also applies in civil cases. *Brock*, 811 F.2d at 283.  "In civil cases, the privilege is stronger because many of the

constitutional rights guaranteed to criminal defendants, which in criminal trials militate in favor of disclosure, do not apply." *In re Kleberg County, Tex.*, 85 Fed. Appx. At 32(citing *Matter of Search of 1638 E. 2nd Street*, 993 F.2d 773, 774-75(10th Cir. 1993); *Dole v. Local 1942, Int'l Bd. Of Elec. Workers*, 870 F.2d 368, 372(7th Cir. 1989).

In civil cases, the privilege does not apply in two instances: when the disclosure sought will not tend to reveal the identity of the informant and when the informant's identity has already been disclosed. *Roviaro*, 353 U.S. at 60 77 S.Ct. at 627, 1 L.Ed.2d 639. The waiver can occur directly, by the informer disclosing his/her identity, or indirectly, through taking some action which reveals his/her interest in the subject matter. Disclosure may be made by the informant or by the government. *Roviaro*, 353 U.S. at 60.

In the instant case, the defendants have made no showing of undue harm or prejudice by the claim of privilege by the government. Absent such a showing, the motion is DENIED as to this request.


5. The information received from Cooperating Individual #3 referenced in Alleman affidavit.

The government makes the same representation for this individual as it did in

item four above, except the notes of the interviews were only those of the OIG agent.

For the same reasons as in Item 4 above, the motion will be DENIED as to this

request.


6. Everything described in Alleman affidavit pertaining to Dr. Mallavarapu,

including information referenced at Paragraph 9.

The government argues that every medical record in its possession has been

given to the defendants and that the only documents not produced are notes from

agents of the FBI and OIG of their interviews of the relator.  The defendants point

out there are inconsistencies between what has been represented the relator provided

in this case and what appears to actually have been provided. Furthermore, the

defendants have no way of verifying the truth without these documents.

The informant privilege does not apply to the relator since the identity of Dr.

Mallavarapu is already known. However, it is conceivable that it may apply to other

individuals identified through the interviews. It is also conceivable that the work

product doctrine may still apply to these notes notwithstanding the showing made by

the defendants. The intent of Judge Doherty's Order, while not a sanction, was

intended to address the inherent problems related to and resulting from the case

being kept under seal for as long as it was. Nonetheless, the undersigned is mindful

there is an active criminal case pending in the court of appeal. Therefore, the Court will ORDER AN *IN CAMERA* INSPECTION of the notes of the interviews of the relator conducted by the FBI Agent and OIG Agent Alleman for the 2003 and 2005 time period to determine if the privilege(s) apply.

7. Information regarding the internal peer review investigation by Lourdes Hospital referenced in the Alleman affidavit at Paragraph 11.  This dispute was resolved by the parties, and the motion is DENIED AS MOOT as to this request.

8. All correspondence between CMS and the government in the criminal case and/or otherwise pertaining to statistical sampling to be used by the Government as proof.

The government asserts it has already provided supporting data and statistical process used in the Statistically Valid Random Sample done during the fraud investigation.  The remaining information is otherwise protected as attorney/client or attorney work product.

In the event a party relies on either the attorney-client privilege or work-product immunity, that party is required to submit sufficient information regarding the document(s) at issue to determine whether any privilege or protection has

attached, been preserved and/or been waived.  Fed.R.Civ.P. 26(b)(5) requires that a party claiming privilege or attorney work product must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that... will enable other parties to assess the applicability of the privilege or protection." The privilege log must establish that the qualified work-product immunity applies, i.e., the documents and/or tangible things were prepared in anticipation of litigation by or for a party or by or for a party's representative.  *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed 451 (1947).  Conclusory assertions of privilege are insufficient.  *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 404 (M.D.La. 1992).

_____The United States' Privilege Log for Withheld Documents [Rec. Doc. 182-1, Govt. Ex. 10, p. 45] was produced on June 28, 2011.  It is made up of a single page. Some of the information meets the requirements for establishing a privilege log; some does not, and some information is simply omitted.  Therefore, the government is ORDERED to supplement its privilege log to assert each privilege it contends is applicable and why it is applicable with enough identifying information for the defendants to determine if the privilege is applicable.

9. Information related to the retrieval of documents from Dr. Patel's office by

nurse Neil Kinn at the request of the government in the criminal matter.

The defendants argue that the information was obtained without a warrant, under improper circumstances, and could not be privileged. The government asserts this information was turned over to Defendant Patel in the criminal case, filed into the record of the criminal case, and available on PACER.

The undersigned finds this response does not comply with Judge Doherty's Order and the government will make this information available to the defendants for review. If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense. To this extent, and this extent only, the motion is GRANTED as to this request.


10. Information regarding a Mr. Huggins with Our Lady of Lourdes and his contact with CMS and/or OIG before Mallavarapu made his disclosure.  Production of the "multiple productions of records" made by Lourdes to the U.S. Attorney. This dispute was resolved by the parties, and the motion is DENIED AS MOOT as to this request.


11. Any/all documents produced by Lourdes in response to subpoenas of 1/27, 3/19, and 6/24/04. This dispute was resolved by the parties, and the motion is

DENIED AS MOOT as to this request.

12. The settlement documentation from Lafayette General settlement.  This dispute was resolved by the parties, and the motion is DENIED AS MOOT as to this request.

13. Information and documentation regarding the numerous civil actions filed in Louisiana state courts re matters addressed in this case, including documents, depositions, or other materials.

The government acknowledges possession of  deposition transcripts from the Touchet v. Patel matter(1005-0318-A, 15th JDC), but asserts Dr. Patel is already in possession of those transcripts since he was represented by counsel in that matter. The defendants make the same arguments as they did in response to documents in the possession of Dr. Patel's criminal defense lawyer and the undersigned agrees the same analysis applies.

The undersigned finds this response does not comply with Judge Doherty's Order and the government will make this information available to the defendants for review. If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense. To

this extent, and this extent only, the motion is GRANTED as to this request.

14. Information/materials from government-retained expert witnesses in the criminal prosecution, including expert reports.

The government represents that the expert reports were turned over to Patel's criminal defense counsel in the criminal matter in June, 2006.

The undersigned finds this response does not comply with Judge Doherty's Order and the government will make this information available to the defendants for review. If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense. To this extent, and this extent only, the motion is GRANTED as to this request.

15. Missing files/documents(Folders 9, 14, 16) from productions previously made relative to two hospitals. Defendants call for disclosure of information about the omitted documents.

The government acknowledges that Folders 9 and 16 were inadvertently not provided and will be provided.  The general content of Folders 9 and 14 is described, and the government declares that Folder 14 "did not contain any relevant information."

The undersigned finds this response does not comply with Judge Doherty's Order and the government will make this information available to the defendants for review. If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense. To this extent, and this extent only, the motion is GRANTED as to this request.

16. All FBI 302s, or other records of interviews of all witnesses in this matter.

The government asserts it is not required to identify the names, dates or other identifying information regarding government interviews with witnesses and its interview memoranda are protected as work product.  Defendants assert that all 302s written by S/A Barbara Alleman became discoverable as *Jencks* material at the criminal trial.

While the undersigned does not agree with the defendants' position, the applicability of claimed privilege as to the 302's cannot be determined. Therefore, the Court will ORDER AN *IN CAMERA*  INSPECTION of those documents.  The testimony before the Grand Jury is privileged and need not be produced.

### Conclusion

Considering the foregoing,

IT IS ORDERED that the motion as it relate to Categories 1, 2, 7, 10, 11, and 12 have been resolved , consequently, the Motion will be DENIED AS MOOT as to

these requests;

IT IS FURTHER ORDERED that the motion, as it relates to Categories 4 and 5 and the Grand Jury testimony identified in Category 16 is DENIED;

IT IS FURTHER ORDERED that the motion, as it relates to  Categories 3, 9, 13, 14, and 15 is GRANTED, and the government is ordered to make this information available to the defendants for review.  If there is anything the defendants wish to have copied, the defendants will so designate and the government will have the documents copied at its expense;

IT IS FURTHER ORDERED that the motion, as it relates to Category 8, is DEFERRED and the government is FURTHER ORDERED to supplement its privilege log consistent with this Court's ruling;

IT IS FURTHER ORDERED that the motion, as it relates to categories 6 and 16 is DEFERRED and the government is FURTHER ORDERED to submit the designated documents for *IN CAMERA* INSPECTION within 10 days of this ruling.

Signed at Lafayette, La. This 3rd day of February, 2012.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)