## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL. | CIVIL ACTION NO. 04-732 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| ACADIANA CARDIOLOGY, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment, filed by the United States.  [Record Document 232].  The Defendants, Acadiana Cardiology LLC; Acadiana Cardiovascular Center, LLC; Mehmood Patel, a Professional Medical Corporation; and Mehmood Patel, M.D. oppose the motion.  [Record Document 242].  For the reasons that follow, the Government's Motion for Partial Summary Judgment [Record Document 232] is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

The instant motion arises out of the *qui tam* action filed on March 25, 2004 by relator Christopher T. Mallavarapu, on behalf of the United States, under the False Claims Act ("FCA"), 31 U.S.C. § 3730, *et seq.* The Defendants are Mehmood Patel, M.D., who practiced as an interventional cardiologist at all times relevant, and three Louisiana entities (Acadiana Cardiology, LLC, Acadiana Cardiovascular Center, LLC, and Mehmood Patel, A Professional Medical Corporation), which were owned and operated by Dr. Patel. In his complaint, the relator alleged he was employed by Acadiana Cardiology as a physician, and

during his employment became aware the Defendants were performing unnecessary, improper, and excessive medical services, for which they were billing federally funded health care programs.  On May 5, 2006, the Government intervened in the suit and, on November 23, 2009, filed a complaint to recover damages and penalties under the FCA. The Government argued that the Defendants knowingly presented and caused to be presented false claims to Medicare.  Specifically, the Government alleged that between January 1, 2000 and December 31, 2003, Dr. Patel performed highly invasive procedures such as cardiac catheterizations, angiograms, and angioplasties, that were not medically necessary, and he, or one of the Defendants, submitted reimbursement claims to Medicare for these procedures and/or services.

In 2006, Dr. Patel was indicted by a federal Grand Jury on ninety-four counts of health care fraud, in violation of 18 U.S.C. § 1347.  The indictment charged that between 2001 and 2004, Dr. Patel wrongfully defrauded, or caused to be defrauded, health care benefit programs by knowingly recommending and performing medically unnecessary procedures; falsifying medical records; falsely reporting his medical findings; and failing to provide his patients with accurate information on their conditions.  Before trial, the Government dismissed three counts [Record Documents 42 & 123] and, ultimately, Dr. Patel was tried on ninety-one counts of health care fraud.  On December 30, 2008, a jury convicted Dr. Patel of fifty-one counts.  Of those counts, thirty-six counts involve false claims to Medicare for which Dr. Patel was reimbursed $18,478.27.  In addition to a sentence of imprisonment, Dr. Patel was ordered to pay a $175,000.00 fine, restitution in

the amount of $387,511.56, and ordered to forfeit $48,231.39, which represented the monies received by Dr. Patel on the convicted counts.

The Government now moves for partial summary judgment, arguing that it is entitled to summary judgment on the thirty-six false claims to Medicare for which Dr. Patel was convicted, on the issues of liability, damages and civil penalties.  In other words, of the thirty-six counts involving false claims to Medicare, the Government now seeks a final determination of liability, as well as the imposition of damages and civil penalties.  The Defendants concede liability on behalf of Dr. Patel, but dispute liability as to the remaining Defendants.  The Defendants concede the assessment of the minimum statutory penalty and do not lodge any objection to the imposition of treble damages.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence.  See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace, 80 F.3d at 1047 (citations omitted).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1985)(citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried.  Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue

to be tried."  All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Local Rule 56.2.

## I.   Liability.

As previously mentioned, the Government moves for summary judgment against the Defendants on the issue of liability.  It submits that the parallel criminal proceeding against Dr. Patel, in which the jury convicted him of these thirty-six false claims to Medicare, entitles it to summary judgment in this FCA civil action.  The Defendants concede that the entry of summary judgment on liability is appropriate as to Dr. Patel, but oppose it as to the remaining Defendants.  In reply, the Government mentions in a footnote that it does not seek summary judgment against Acadiana Cardiovascular Center, LLC or Mehmood Patel, a Professional Medical Corporation; however, it does believe it is entitled to judgment against Dr. Patel and Acadiana Cardiology.  See Record Document 243 at 2 & n.1.

"Collateral estoppel prevents parties from re-litigating the same issues conclusively determined between them in a previous action."  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 572 (5th Cir. 2005)(internal marks omitted).  "[A] criminal conviction may be used by a party to a subsequent civil proceeding to estop the former defendant from relitigating issues which were necessarily resolved against him in the prior criminal case."  Meadows v. Evans, 550 F.2d 345 (5th Cir. 1977); see also In re Grothues, 226 F.3d 334, 339 (5th Cir. 2000); Johnson v. Sawyer, 47 F.3d 716, 723 n.13 (5th Cir. 1995).  "It is well

established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding. Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69, 71 S. Ct. 408, 414, 95 L. Ed. 534 (1951).  Thus, when an issue is resolved in favor of the United States in a criminal prosecution, that issue may not be contested by the same defendant in a subsequent civil suit brought by the government.  See Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir. 1964).

Dr. Patel concedes that he is estopped from denying that he engaged in health care fraud.  Indeed, due to his criminal conviction, Dr. Patel is estopped from taking a position in this civil action that is inconsistent with that considered verdict.   However, based upon the pleadings presented, the Court cannot reach the same conclusion as to Acadiana Cardiology.  As the Supreme Court has explained, "one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Allen v. McCurry, 449 U.S. 90, 95, 101 S. Ct. 411, 415 (1980).  In the Government's motion for summary judgment, it submits numerous times that Dr. Patel's guilt was established in an earlier proceeding and that there is no genuine issue of fact as to Dr. Patel's liability.  However, the motion is bereft of any specific evidence regarding Acadiana Cardiology.  In its reply, the Government mentions *for the first time* in a footnote that it seeks summary judgment against Dr. Patel and Acadiana Cardiology only, and *not* against the remaining two defendants.  However, the

Government has failed to distinguish why Acadiana Cardiology should be treated differently than the other two Defendants and why Acadiana Cardiology should be estopped from contesting the issues decided in the criminal proceeding.  After all, Acadiana Cardiology was not a defendant in the criminal case against Dr. Patel.

In this case, the dockets (both criminal and civil) are vast, the filings are often voluminous, and the case spans a number of years.  As the parties well know, this Court is not the same one to which the criminal case was tried.  It may well be that somewhere in the record, there is evidence that entitles the Government to claim that Acadiana Cardiology should be estopped from denying liability for the thirty-six false claims submitted to Medicare; however, at this time, the Government has failed to properly present this evidence to the Court.[2]  The Court cannot search this voluminous record to locate such evidence, if it exists, for the Government.[3]  See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  The Government's failure to explain why summary judgment is appropriate as to Acadiana Cardiology compels the Court to deny summary judgment as to Acadiana Cardiology.  Thus, partial summary judgment on the issue of liability on the thirty-six fraudulent claims submitted to Medicare is **GRANTED** as to Defendant Dr. Patel and

---

[2] In its reply memorandum, the Government attached documentation for one patient, which evidenced payment to Acadiana Cardiology.  Although the Government classified this exhibit as representative of the thirty-six claims, the Court cannot take such a broad view of the evidence.  Moreover, it does not, in and of itself, result in collateral estoppel.

[3] To the extent any information pertaining to Acadiana Cardiology was contained within Government Exhibit 320 [Record Document 232-2, pp. 42-46], the Court notes that the charts submitted were illegible.

otherwise **DENIED**.

**II.    Penalties and Damages.**

31 U.S.C. § 3729(a)(1)(G) provides that in the event a defendant is liable for submitting false claims to the Government, he is also liable for a civil penalty of between $5,500 and $11,000 and "three times the amount of damages which the Government sustains because of the act of that person."  Id.; 28 C.F.R. § 85.3(a)(9).

A.    Penalty.

Although the Government initially sought the maximum penalty-- $11,000-- as to each of the thirty-six counts, in its reply memorandum it "agree[d] [with the Defendants] that an award of $5,500 per false claim would be reasonable in this case."   Record Document 243, p. 3.  Dr. Patel plainly concedes that, at a minimum, the imposition of a $5,500 penalty per claim is appropriate.  See Record Document 242, pp. 3-4.  Accordingly, the Court **GRANTS** summary judgment as to the imposition of a penalty and awards a $5,500 penalty per false claim, for a total penalty award of $198,000.00.

B.    Damages.

In its motion for partial summary judgment, the Government specifically moves for the imposition of treble damages.  However, the Defendants do not lodge any objection to damages, have not pointed to any legal impediment to the imposition of damages at the summary judgment stage, nor have they contraverted the Government's position as they are required to under Rule 56.

The FCA mandates the imposition of treble damages for the thirty-six false claims submitted to Medicare.  Damages are limited to the amount that the Government paid out by

reason of the false claim.  See U.S. ex rel. Longhi v. Lithium Power Tech., 575 F.3d 458, 473 (5th Cir. 2009).  In this case, because the medical procedures and/or services were medically unnecessary, Medicare would not have paid any money to Dr. Patel.  Therefore, the damages total $18,478.27, which is the total amount Medicare paid to Dr. Patel on the thirty-six Medicare claims for which he was convicted.  In order to properly calculate the award, the Supreme Court has instructed that the damages should be trebled before any compensatory payments, previously received by the Government, are credited.  See United States v. Bornstein, 423 U.S. 303, 316, 96 S. Ct. 523 (1976).  Thus, in this case, the trebled damages amount to $55,434.81.  The Defendants are credited for the funds recovered by Medicare in restitution, in the amount of $18,478.27.  Accordingly, the Court **GRANTS** summary judgment on the issue of damages and finds the Government is entitled to an award in the amount of $36,956.54.

<u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS ORDERED** that the Government's Motion for Partial Summary Judgment [Record Document 232] be and is hereby **GRANTED IN PART** and **DENIED IN PART**.  Pursuant to 28 U.S.C. § 1961(a), the Defendants are liable for legal interest on the awards granted herein, which interest will accrue at the prevailing legal rate from the date of this ruling until paid in full.

**THUS DONE AND SIGNED** this 27th day of March, 2014 in Shreveport, Louisiana.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE